2013 Ark. App. 104

Mary WEATHERSPOON, Appellant

v.

ARKANSAS DEPARTMENT OF HUMAN SERVICES and T.N.1, and T.N.2, minors, Appellees.

No. CA 12–862.

Court of Appeals of Arkansas.

Feb. 20, 2013.

Janet Lawrence, Arkansas Public Defender Commission, for appellant.

Tabitha Baertels McNulty, County Legal Operations, for appellee.

ROBERT J. GLADWIN, Chief Judge.

Appellant Mary Weatherspoon seeks reversal of the July 19, 2012 order of the Pulaski County Circuit Court terminating her parental rights to her two minor children, T.N.1 and T.N.2.[1] She argues that there was insufficient evidence to support the circuit court's finding that termination was in the best interest of the children.

We find no error and affirm the circuit court's order.

The Arkansas Department of Human Services (DHS) became involved when T.N.2 reported to her school's employees that her brother, T.N.1, had sexually abused her on January 14, 2011. After an investigation, DHS exercised a seventy-two-hour hold on T.N.2 on February 28, 2011. An order for emergency custody was granted by the circuit court on March 2, 2011. The circuit court subsequently adjudicated T.N.2 dependent-neglected as a result of appellant's unfitness, neglect, and instability, and found it in T.N.2's best interest to remain in the care of DHS on June 3, 2011. When adjudicating T.N.2, the circuit court took judicial notice of two prior dependency-neglect cases concerning T.N.2's siblings, appellant's five older children, D.W., J.W., T.N.1, R.S.1, and R.S.2. Appellant appealed the adjudication of T.N.2 as dependent-neglected to this court, see Weatherspoon v. Ark. Dep't of Human Servs., 2012 Ark. App. 34, 2012 WL 76165; however, this court deferred to the circuit court's superior opportunity to observe, witness, and evaluate the credibility of the parties and affirmed the decision of the circuit court.

Appellant participated in the DHS case plan and claims to have complied with most aspects of the case plan and relevant court orders. She was ordered to maintain stable housing and employment, remain drug and alcohol free, complete parenting classes, submit to a psychological evaluation, and follow any recommendations. She has had no positive drug screens. Appellant completed parenting classes and her psychological evaluation. She maintained significant contact with

---

1. We note that Jessica S. Yarbrough entered an appearance on behalf of appellant in this matter on January 25, 2013.

T.N.1 and T.N.2 until her visitation was removed.

Five months after the review hearing, however, T.N.1 was removed from appellant's custody. A second dependency-neglect case began before the circuit court based on allegations that appellant was impeding reunification services in the case concerning T.N.2, and that T.N.1 was attending school dirty, without appropriate clothing, and hungry. T.N.1 was subsequently adjudicated dependent-neglected based on appellant's conduct, including her history with DHS. The circuit court found that appellant had subjected her children to ₃aggravated circumstances and that there was little likelihood that services to the family would result in reunification with the family based on the "full array of services" appellant had been offered in 2005 and in the case involving T.N.2. The goal of T.N.2's case was set as termination of parental rights. On the same day T.N.1 was adjudicated dependent-neglected, the circuit court held a permanency-planning hearing in T.N.2's dependency-neglect case. The circuit court changed the goal in T.N.2's case from reunification to termination of parental rights.

Three months later, a termination-of-parental-rights hearing was held. The first witness to testify was appellant's current therapist, Letha Richardson. The therapist stated that appellant made only "slight progress" and still had issues that she needed to address. Richardson was not aware that appellant had previous therapy, and Richardson acknowledged never having spoken with that therapist, relying only on information that appellant supplied. Richardson was also unaware of the incident where appellant rammed her vehicle into another vehicle, and Richardson agreed that such information would be important relating to appellant's treatment. Richardson opined that appellant

needed to work on her depression issues and her inability to manage her emotions and deal with unforeseen circumstances, but she was unable to say how much longer appellant would need to be in therapy. Additionally, Richardson could not say if T.N.1 and T.N.2 would be in danger if returned to appellant.

The next witness was appellant's previous therapist, Sylvia Jones. She began seeing appellant on April 13, 2011, and discharged appellant on November 30, 2011, because ₄appellant completed the program. Jones worked with appellant on her anger and communication issues. Jones testified that appellant showed progress in anger management and learned techniques to deal with her anger. However, Jones was unaware of the assault charge that occurred prior to appellant's discharge from therapy. Jones was not aware that appellant was arrested for "ramming her car into someone else and getting a tire iron and chasing them." She conceded that she would not have discharged appellant from therapy had she known about this "major incident." Jones stated that completion of counseling does not necessarily mean the person benefitted from the counseling. She also testified that there is nothing additional that could be offered to a person who has completed the program.

The DHS caseworker, Tammy Blount, testified that she did not see improvement in appellant's communication with DHS. She explained that she did not think any additional services would make a difference. Despite all the services offered to appellant, Blount unequivocally stated that she did not believe the children would be safe with appellant.

The children's father and appellant's husband, Terrell Nichols, also testified. He stated that appellant, in the month prior to the termination, had threatened

and harassed him. As a result, he pressed charges and obtained a no-contact order.

Dr. Karen Boyd–Worley, who was qualified as an expert, also testified at the termination hearing. Dr. Worley is a psychologist and director of the Family Treatment Program, which is a clinic that provides mental-health treatment for sexually abused children and their families. Dr. Worley testified about the family's participation in therapy for the sexual abuse between T.N.1 and T.N.2. She explained that there was a family session with T.N.1 where he admitted he touched T.N.2 inappropriately, and that appellant was proud of T.N.1 during that session. In a subsequent session, however, when T.N.1 was apologizing to T.N.2, appellant was not engaged despite T.N.1's request that she participate. Dr. Worley said appellant "kind-of turned her back to the children" and had stated to Dr. Worley that she was "really, really angry to think her child would be removed for such a silly thing, that it was not serious, and that he really hadn't done it." As a result, T.N.2 had a very difficult time with the session. After multiple instances where appellant did not seem engaged in the therapeutic process, Dr. Worley determined that it was not appropriate to have appellant in the sessions with T.N.1 and T.N.2. Dr. Worley testified that appellant's actions made it impossible to address the sexual-abuse issues with T.N.1 and T.N.2, the joint sessions with appellant were destructive to the children, and they had "hit a stalemate." She stated that appellant did not make progress and there was no additional therapy that could have been provided to help her. Dr. Worley agreed that appellant sabotaged the efforts to address the sexual-abuse issues and that appellant's anger issues were a barrier. Dr. Worley believed the children would be at risk of harm if returned to appellant because it did not appear appellant would adequately supervise them or respond appropriately if there were any allegations of sexual abuse. Dr. Worley was also concerned about appellant's anger issues and any violence the children would be exposed to. According to Dr. Worley, appellant likely understood the concepts she learned in her anger-management program but did *not seem interested in implementing those* concepts. Dr. Worley stated that appellant did not benefit from therapy and she had "no confidence [appellant] would protect T.N.2 if she came again and reported some type of sexual abuse."

Appellant also testified. At the time of the termination hearing, appellant had been on probation for three years. Appellant pled guilty to assault after she ran her vehicle into another vehicle. Her thirteen-year-old son was in the car during this incident. Appellant did not understand how the assault incident would raise a concern that she did not benefit from anger management, and she did not believe the two things were related.

The circuit court terminated appellant's parental rights on July 19, 2012, finding it in the best interest of T.N.1 and T.N.2 to terminate appellant's parental rights and place the children for adoption. Appellant filed a timely notice of appeal on July 31, 2012.

■ Termination of a parent's rights must be based on clear and convincing evidence that it is in the best interest of the children, considering the likelihood that the children will be adopted if the parent's rights are terminated and the potential harm caused by returning the children to the custody of the parent. *Latham v. Ark. Dep't of Health & Human Servs.*, 99 Ark.App. 25, 256 S.W.3d 543 (2007); Ark.Code Ann. § 9–27–341(b)(3)(A). The court must also find one of the grounds outlined in Arkansas Code

Annotated section 9–27–341(b)(3)(B) (Supp. 2011).

■ The rights of natural parents are not to be passed over lightly; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Trout v. Ark. Dep't of Human Servs.*, 84 Ark.App. 446, 146 S.W.3d 895 (2004). A circuit court's order terminating parental rights must be based on findings proven by clear ₇and convincing evidence pursuant to Arkansas Code Annotated section 9–27–341(b)(3). Clear and convincing evidence is defined as the degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Ullom v. Ark. Dep't of Human Servs.*, 67 Ark. App. 77, 992 S.W.2d 813 (1999).

■ Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark.App. 395, 242 S.W.3d 305 (2006). A heavy burden is placed upon a party seeking to terminate the parental relationship, and the facts warranting termination must be proved by clear and convincing evidence. *Causer v. Ark. Dep't of Human Servs.*, 93 Ark.App. 483, 220 S.W.3d 270 (2005). On appeal, the appellate court will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Ullom, supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark.App. 247, 240 S.W.3d 626 (2006). This, however, does not mean that the appellate court is to act as a "super factfinder," substituting its own judgment or second guessing the credibility determinations of the circuit court; the appellate court reverses only those cases where a definite mistake has occurred. *Benedict, supra.*

The circuit court in this case terminated appellant's parental rights after finding that, with respect to T.N.1 and T.N.2, despite reasonable services from DHS, appellant had not remedied the issues that caused removal or the subsequent issues that arose after removal, thus making it in the best interest of T.N.1 and T.N.2 to sever the parental relationship under ₈Arkansas Code Annotated section 9–27–341(b)(3)(B)(i)(a). Appellant argues that the circuit court erred in finding that she is incapable of providing a safe and healthy environment and that it was in T.N.1's and T.N.2's best interest to sever their familial ties with appellant.

■ We disagree. Arkansas law requires that a best-interest finding be based upon a consideration of at least two factors: (1) the likelihood that, if parental rights are terminated, the juvenile will be adopted; and (2) the potential harm caused by "continuing contact with the parent. . . ." Ark.Code Ann. § 9–27–341(b)(3)(A). It is the overall evidence, not proof of each factor, that must demonstrate that termination is in the child's best interest. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark.App. 323, 210 S.W.3d 143 (2005). The potential-harm evidence, moreover, must be viewed in a forward-looking manner and considered in broad terms. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark.App. 337, 285 S.W.3d 277 (2008).

*Adoptability*

Regarding adoptability, Wendy Childs, the DHS-assigned adoption specialist, opined that, if appellant's parental rights were terminated, T.N.1 and T.N.2 would be adopted. Moreover, appellant does not specifically challenge the finding that the

children were adoptable; as such, this court is left to examine whether the circuit court's finding that returning the children to appellant would subject them to potential harm is clearly erroneous. Based on Childs's testimony, and because the circuit court considered the likelihood that the children would be adopted, we hold that this prong of the circuit court's best-interest finding does not warrant reversal.

### ₉Potential Harm

When making the decision whether to terminate parental rights, the circuit court has a duty to look at the case as a whole and how the parent has discharged her parental duties, the substantial risk of serious harm the parent imposes, and whether the parent is unfit. *In re Adoption of K.M.C.*, 62 Ark.App. 95, 969 S.W.2d 197 (1998). This "harm analysis" should be conducted in broad terms. *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001).

Appellant argues that this prong of the best-interest analysis was not proved because she completed portions of her case plan, had a safe home, and was ready to have her children returned to her care. Progress toward or even completion of the case plan is not a bar to termination of parental rights. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). Even full completion of the case plan is not determinative of the outcome of the termination proceeding. *Wright v. Ark. Dep't of Human Servs.*, 83 Ark.App. 1, 115 S.W.3d 332 (2003). What matters is whether completion of the case plan achieved the intended result of making a parent capable of caring for the child; mere compliance with the orders of the court and DHS is not sufficient if the roots of the parent's deficiencies are not remedied. *Lee, supra.*

While appellant completed portions of the case plan, including anger-management classes, testimony indicated that the issue had not been resolved. Therapists Sylvia Jones and Letha Richardson, DHS caseworker, Tammy Blount, appellant's husband, Terrell Nichols, and Dr. Karen Boyd–Worley, all testified regarding appellant's anger-control problem, and ₁₀we hold that the evidence supports the circuit court's finding that the anger-control problem could expose the children to potential harm.

Finally, appellant argues that she cannot be an unfit parent because DHS closed the previous cases concerning appellant and her children and because DHS did not remove all of her children from her home. Appellant asserts that if she is seen as an appropriate parent for one child, she should be seen as an appropriate parent for all her children. Appellant did not make this particular argument to the circuit court; as such, it is not preserved and will not be considered. *See Johnson v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 537, 2012 WL 4478546.

Even if the argument had been preserved, when making its best-interest analysis, the circuit court must make an individual determination whether termination is in each child's best interest and cannot treat the children as an amorphous group in which the best interest of one will meet the interests of all. *Dominguez v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 404, 2009 WL 1406284. This specific case only concerned appellant's youngest two children, T.N.1 and T.N.2. The circuit court acknowledged previous issues with appellant's older children but did not think it could do anything for those children because they were older—approximately nineteen, seventeen, sixteen, and thirteen years old—and that "the die is cast with them." The circuit court stated that T.N.1

and T.N.2 were young and "still have a potential and they still have a future and it's still important where they live and what household they're in." Additionally, T.N.1 and T.N.2 suffered abuse, whereas there were never similar allegations regarding the older children. We hold that it was not reversible error for the circuit court to distinguish between T.N.1 and T.N.2 and their older siblings when making its best-interest analysis. *See Dominguez, supra.*

Affirmed.

WYNNE and HIXSON, JJ., agree.