

# ARKANSAS COURT OF APPEALS

DIVISIONS IV & I
**No.** CV-16-960

|  |  |
|---|---|
| RICKY HOWELL AND SUSAN HOWELL<br>APPELLANTS<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN<br>SERVICES AND MINOR CHILDREN<br>APPELLEES | **Opinion Delivered** March 8, 2017<br><br>APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[NO. 72J-15-192]<br><br>HONORABLE STACEY ZIMMERMAN,<br>JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Ricky and Susan Howell both appeal the Washington County Circuit Court's order terminating their parental rights to their three children, R.H., G.H., and L.H. We affirm the termination of both parents' parental rights.

Ricky and Susan had been involved in a protective-services case in which they had both failed drug screens and in which the Arkansas Department of Human Services (DHS) had raised concern about the cleanliness of the house, bedbugs, the children's hygiene, and the parents' failure to provide the children with needed medications. The current case was initiated when the children were removed from their parents' custody after Ricky had called DHS and stated that he could not handle the children or the stress of raising them. On March 12, 2015, the circuit court found that probable cause existed to maintain the children in DHS custody due to the parents' illegal drug use and failure to provide a safe home. The circuit court found that DHS had previously provided a wide array of services to the parents through the

protective-services case since October 24, 2014. The court ordered that the parents submit to a psychological evaluation, participate in individual counseling, not use illegal drugs, complete a drug-and-alcohol assessment, follow the recommendations resulting from that assessment, submit to weekly drug screens, obtain and maintain appropriate housing, and comply with the case plan and all court orders. It also granted visitation. Following the entry of the probable-cause order, DHS provided the Cherokee Nation of Oklahoma with notice that the children were eligible for membership.

At the adjudication hearing on April 14, 2015, the court found the children dependent-neglected due to neglect and parental unfitness. The court found that 25 U.S.C. sections 1902, et seq., the Indian Child Welfare Act (ICWA), was applicable to the case because Susan is an enrolled member of the Cherokee Nation.

On or about June 15, 2015, Ricky requested that, instead of attending inpatient substance-abuse treatment, he be permitted outpatient treatment in order that he not lose his SSI income, and the court permitted him to attend outpatient treatment. At the next review hearing, Susan was found to be complying with the case plan, but Ricky had tested positive for THC. The circuit court approved DHS's request that the couple be allowed to move to Oklahoma to receive services through the Cherokee Nation. The court specifically ordered the parents to address three issues: drug use, anger management, and their ability to parent special-needs kids. The court also found that DHS had made reasonable and active efforts toward reunification.

At the permanency-planning hearing on March 16, 2016, the circuit court found by clear and convincing evidence that returning the children to Ricky and Susan's custody would

SLIP OPINION

likely result in serious emotional or physical damage to the children. The circuit court changed the goal of the case to adoption and found that the parents were not making substantial, measurable progress. It found that Susan had not shown that she could practice the parenting skills she had been taught, could not comprehend and meet the children's special needs, and could not care for herself without Ricky's help. Despite being compliant with the case plan, she had made minimal progress. The court also found that Ricky had not completed anger-management or outpatient-drug counseling, had not shown that he could put into practice the parenting skills that he had been taught, had not maintained his sobriety, had refused to take a hair follicle test, and had shown up in court with his hair shaved in order to avoid testing.

DHS filed a petition to terminate Ricky and Susan's parental rights on April 15, 2016, alleging two statutory grounds for termination. First, DHS alleged that the juveniles had been adjudicated by the court to be dependent-neglected and had continued to be out of the custody of the parents for twelve months and, despite a meaningful effort by the department to rehabilitate the parents and correct the conditions that caused removal, those conditions had not been remedied. Ark. Code Ann. § 9-27-341 (b)(3)(B)(i)*(a)* (Repl. 2015). Second, DHS charged that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect, and that despite the offer of appropriate family services, the parents had manifested the incapacity or indifference to remedy the subsequent issues or rehabilitate their circumstances. Ark. Code Ann. § 9-27-341 (b)(3)(B)(vii)*(a)*.

The termination hearing was held on July 15, 2016, after which the circuit court terminated Ricky and Susan's parental rights on both grounds alleged by DHS. The court made the findings beyond a reasonable doubt and further stated that it relied on qualified

expert testimony that DHS had provided services and programs to prevent the breakup of the Indian family as required by the ICWA. These timely appeals followed.

The standard of review in appeals of termination of parental rights is de novo, but we reverse a trial court's decision to terminate parental rights only when it is clearly erroneous. *Ullom v. Ark. Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000); *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851; *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999); *Hopkins v. Ark. Dep't of Human Servs.*, 79 Ark. App. 1, 83 S.W.3d 418 (2002).

On appeal, both parents challenge the sufficiency of the evidence as to both statutory grounds. Regarding the court's finding that the appellants failed to remedy the conditions causing the children's removal, Ricky admits that he tested positive for illegal drugs in March and June 2016, but he contests the validity of those results. He also argues that it was error for DHS not to accept the results of a drug screen he claims was taken at his private doctor's office. Ricky claims that he had not used illegal drugs since approximately a month after the children were removed. Ricky's arguments fail to overcome the deference appellate courts give to the circuit court's superior opportunity and position to judge the credibility of witnesses. *See Matlock v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 184, at 6, 458 S.W.3d 253, 257. Moreover, the court was presented with witness testimony that Ricky was unable to manage the children at visitations and had interacted inappropriately with them. The record further reveals that the court had repeatedly found that Ricky was not in full compliance with the case

plan due to his failure to complete court-ordered anger-management and drug-treatment programs. Based on a review of all the evidence, we do not conclude that the circuit court's finding that Ricky failed to remedy the causes of the children's removal was clearly erroneous.

Susan's challenge to the court's failure-to-remedy finding is different: she claims that it was based on the court's previous finding of parental neglect and unfitness in the adjudication order and argues that the adjudication order failed to apply the higher burden of proof mandated by the ICWA. However, we cannot reach this issue because it has been waived. Pursuant to Rule 6-9(a)(1)(A) of the Arkansas Rules of Appellate Procedure-Civil, the adjudication order was a final, appealable order. Susan failed to file a timely notice of appeal from the adjudication order; therefore, we may not consider allegations that it contained error. *Jefferson v. Ark. Dep't of Human Servs.*, 356 Ark. 647, 657, 158 S.W.3d 129, 135 (2004). Further, Susan did not object during the termination hearing when a certified copy of the adjudication order was entered into evidence. Thus, her argument is not preserved for appeal.

Both parents also challenge the court's finding that the other-subsequent-factors ground supported termination of their parental rights. However, we need not address this issue, as only one ground is necessary to terminate parental rights. *Vail v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 150, at 18, 486 S.W.3d 229, 238.[1]

---

[1]Susan argues that it was error for the circuit court to rely on the same evidence to support both the failure-to-remedy and other-subsequent-factors grounds because a subsequent factor inherently implies a temporal element requiring the factor to arise after the initial removal of the children. In *Guthrey v. Arkansas Department of Human Services*, 2017 Ark. App. 19, at 9, we commented in dicta that,

> [i]n this case, it was also logically inconsistent for the court to have relied on the exact same facts for both its "failure to remedy" and "other subsequent factors" findings.

SLIP OPINION

Ricky also argues on appeal that there was insufficient evidence to support the court's finding beyond a reasonable doubt that returning the children to his custody would be likely to result in serious emotional or physical damage to the children, which is the relevant statutory standard pursuant to the ICWA. 25 U.S.C. § 1912(f). Ricky argues that there was no evidence to indicate that he could not parent his children or that his home was unfit. As discussed above, the court's main concern with Ricky was his illegal drug use. Case law is clear that a parent's continuing use of illegal drugs poses a risk of harm to the children if returned to that parent. A court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, at 3, 451 S.W.3d 231, 233. Moreover, as discussed above, there was testimony about Ricky's inability to handle the children during visitation and his inappropriate interactions with them. To the extent that Ricky disputes such testimony, we defer to the circuit court's assessment of the witnesses' credibility. *See Morton v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 388, at 10–11, 465 S.W.3d 871, 877.

Susan's final point on appeal is also a challenge to the court's finding, pursuant to the ICWA, that returning the children to her custody would be likely to result in serious emotional or physical damage. She argues that the ICWA requires that

---

The problems either caused the children's removal or they arose subsequent to removal, but not both.

2017 Ark. App. 19, at 9. Because we affirm the circuit court's termination of Susan's parental rights on separate grounds, we need not decide whether the court erred in exclusively relying on the same factual findings to support both grounds.

> [n]o termination of parental rights may be ordered in such proceeding in the absence of the determination, supported by evidence beyond a reasonable doubt, *including testimony of qualified expert witnesses*, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

25 U.S.C. § 1912(f) (emphasis added). She claims that the Cherokee Nation representative who testified before the circuit court, child-welfare specialist Nicole Allison, was not qualified as an expert witness pursuant to the ICWA[2] and that her testimony was therefore insufficient to meet the statutory burden of proof.

Susan acknowledges that she failed to raise this issue below and acknowledges that we recently held in *Johnson v. Arkansas Department of Human Services*, 2016 Ark. App. 49, 481 S.W.3d 463, that challenges to the expert qualification of the ICWA representative in a termination-of-parental-rights case must be preserved at trial in order to be raised on appeal. However, she asks us to overrule *Johnson*, arguing that it is inconsistent with *Williamson v. Elrod*, 348 Ark. 307, 72 S.W.3d 489 (2002), in which the Arkansas Supreme Court held that expert testimony as to the standard of care in a medical-malpractice case was an element of the claim and need not be raised as a contemporaneous objection during the witness's testimony in order to preserve the issue for appeal.[3] Specifically, in *Williamson*, the supreme court noted that "the appropriate

---

[2]We take Susan's argument to raise two issues: (1) whether the circuit court declared Allison to be a qualified expert and (2) whether Allison possessed the necessary qualifications for such a designation.

[3]While the language in *Johnson* indicates that a contemporaneous objection to the witness's qualification as an expert pursuant to the ICWA is necessary in termination cases, both *Johnson* and its predecessor, *Philpott v. Arkansas Department of Human Services*, 2011 Ark. App. 572, actually involved challenges that were never raised before the trial court *in any form* (contemporaneous objection, directed-verdict motion, or objection to the final order). Therefore, those cases are more accurately understood as continuations of the well-established

time to challenge the failure to meet the standard of proof was during the directed-verdict motion," which is what the appellant did in that case. In contrast, in the present case, Susan never challenged Allison's qualification as an expert prior to this appeal, despite having many opportunities to do so.[4] Therefore, we note that, even under the standard put forward in *Williamson*, which Susan urges us to adopt in ICWA cases, her challenge to Allison's qualification as an expert would remain unpreserved because she is raising it for the first time on appeal.

Affirmed.

ABRAMSON, VIRDEN, and GLADWIN, JJ., agree.

WHITEAKER and MURPHY, JJ., dissent.

**MIKE MURPHY, Judge, Dissenting.** I agree with the majority that the termination of Ricky Howell's parental rights in this case was appropriate. I respectfully disagree, however, with the conclusion that, because Susan did not preserve the expert-witness-qualification issue below, she is now precluded from doing so on appeal.

The Indian Child Welfare Act (ICWA) requires testimony from a qualified expert witness at the termination hearing. 25 U.S.C. § 1912. It is part of the State's heavy burden of proof and is an element fixed by federal statute. The ICWA was designed to address the concerns surrounding removing large numbers of Indian children from their families and

---

rule that we will not entertain an argument raised for the first time on appeal, which is in keeping with the supreme court's holding in *Williamson*.

[4]For example, Susan could have raised an objection when Allison testified about her qualifications, could have addressed the issue in a motion for directed verdict, and could have objected when the court issued its termination order, which specifically designated Allison as a qualified expert.

tribes through adoption or foster-care placement, usually in non-Indian homes. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32 (1989). To address this concern, Congress demanded proof beyond a reasonable doubt, including qualified expert testimony, when state agencies seek to terminate the parental rights of Native Americans.

On appeal, Susan asked that we revisit our holding in *Johnson v. Arkansas Department of Human Services*, 2016 Ark. App. 49, 481 S.W.3d 463, insofar as it is inconsistent with *Williamson v. Elrod*, 348 Ark. 307, 72 S.W.3d 489 (2002).

The majority states that Susan should have raised an objection when Nicole Allison testified, moved for directed verdict, or objected when the court issued its termination order, and highlights the language from *Williamson* that "the appropriate time to challenge the failure to meet the standard of proof was during the directed-verdict motion." *Id.* at 312, 72 S.W.3d at 492. The majority is in error, however, because, like in *Williamson*, Susan's challenge that there was no expert testimony as required by the ICWA is a sufficiency-of-the-evidence challenge, but unlike *Williamson*, hers was a bench trial. Our law is long settled that in a nonjury trial, a party who does not challenge the sufficiency of evidence does not waive the right to do so on appeal. Ark. R. Civ. P. 50(e); *see, e.g., Oates v. Oates*, 340 Ark. 431, 10 S.W.3d 861 (2000); *see also In the matter of N.L.*, 754 P.2d 863 (Okla. 1988) (ICWA dependency-neglect case reversed after finding a failure to properly present expert testimony, distinguishing an argument as to the sufficiency of the evidence raised on appeal versus the need to object at trial).

To demand that Susan voir dire or object to Allison's testimony is equally inappropriate. As the *Williamson* court pointed out,

> To require a party to object that the opposing party did not meet its burden of proof during a witness's testimony would allow the opposing party to then resume

9

questioning to meet that burden. In other words, had appellant objected during Dr. Landrum's testimony that the burden of proof was never established or met, then Elrod would have immediately cured the lack of proof by asking more questions, thus, in essence, shifting the burden of proof to appellant to show that the standard was not met rather than keeping it with Elrod to establish that it was met.

*Williamson,* 348 Ark. at 312, 72 S.W.3d at 492–93.

In termination-of-parental-rights cases, it is DHS's burden to prove each element, and in ICWA cases, to prove those elements beyond a reasonable doubt. It is unconscionable to (1) shift that burden to the parents to prove how those elements were not met, rather than keeping it on the State to establish that it was and (2) afford litigants in actions for monetary damages more evidentiary protections than parents pitted against the State in actions implicating a fundamental constitutional liberty interest.

Furthermore, and with all due respect, how exactly was Susan to divine that Nicole Allison was to be the qualified expert witness if DHS never moved to establish her as such? Arkansas courts have relied on guidelines promulgated by the Bureau of Indian Affairs to assist in defining a qualified expert witness under the Act. *See Burks v. Ark. Dep't of Human Servs.,* 76 Ark. App. 71, 61 S.W.3d 184 (2001).

Those guidelines provide that the following persons are most likely to meet the requirements of a qualified expert witness for purposes of Indian ICWA proceedings:

(i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs;

(ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians;

(iii) A professional person having substantial education and experience in the area of his or her specialty.

*Id.*

As a Montana court facing the same issue put it,

> Nowhere in the transcript of the termination hearing is there any indication that the Department ever expressly offered—let alone qualified—Hicks' testimony as that of an ICWA "expert." Nor did the District Court ever expressly rule on Hicks' qualifications as an ICWA expert during that proceeding. . . .We refuse to endorse the unreasonable notion, implicit in the Department's position on appeal, that T.L.E. was under an obligation to object to each and every witness offered by the Department if she wished to preclude a witness from being deemed, after the fact, an ICWA expert.

*In re K.H.*, 981 P.2d 1190, 1194–95 (Mont. 1999).

Finally, the majority notes that the trial court refers in its order to witness Nicole Allison as an expert witness. While the trial court may have familiarity with this particular witness, there is scant testimony in *this* record to support that conclusion in terms of even the most bare-bones evidentiary foundation.

Prior to giving her opinion as to parental termination, Ms. Allison testified that she is "a child welfare specialist III for the Cherokee Nation, Indian Child Welfare," was assigned to the case when the tribe was notified the children were eligible members, participated in this case and at hearings prior to the termination hearing, and discussed the services provided to Susan and Ricky by DHS and the Cherokee Nation. On this record alone, I believe there was not an adequate foundation laid from which the trial court could have assessed whether the witness possessed any of the requirements set out in the guidelines provided in *Burks*.

For these reasons, I respectfully dissent.

WHITEAKER, J., joins in this dissent.

*Dusti Standridge*, for appellant Ricky Howell.
*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant Susan Howell.
*Mary Goff*, Office of Chief Counsel, for appellee.
*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.