RAYMOND R. ABRAMSON, Judge
Tabatha Black appeals from the Scott County Circuit Court order terminating her parental rights to her son, S.N. On appeal, Black argues that it was not in S.N.'s best interest to terminate her parental rights. Specifically, Black asserts that because S.B., a sibling of S.N.'s, remained in her custody, the circuit court's potential-harm finding was in error. Black does not contest the statutory grounds for termination. For the following reasons, we affirm.
An order forever terminating parental rights must be based on clear and convincing evidence that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2017). In determining whether termination is in the child's best interest, the circuit court must consider the likelihood that the child will be adopted if the termination petition is granted and the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) and (ii). Additionally, the Arkansas Department of Human Services (DHS) must prove by clear and convincing evidence at least one statutory ground for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). We do not reverse a termination order unless the circuit court's findings of clear and convincing evidence were clearly erroneous. Meriweather v. Ark. Dep't of Health & Human Servs. , 98 Ark. App. 328, 255 S.W.3d 505 (2007). Because Black makes no challenge to the statutory grounds found by the circuit court to terminate her parental rights, the statutory-grounds decisions *521 must be affirmed. See Benedict v. Ark. Dep't of Human Servs. , 96 Ark. App. 395, 409, 242 S.W.3d 305, 316-17 (2006).
In May 2014, S.N., who was four years old at the time, was removed from the custody of Black. S.N. was subsequently adjudicated dependent-neglected because Black "could not provide adequate supervision or housing for the juvenile as a result of her substance abuse." S.N. was eventually placed with his father, Jeffrey Newell. Black complied with the case plan only in part, and the circuit court found that her compliance was insufficient for reunification with S.N. Custody was awarded to Newell with supervised visitation to Black, and the case was closed.
Four months after the case had been closed, S.N. was removed from Newell on an emergency basis after he was arrested concerning a fatal stabbing, thus leaving S.N. without a caretaker. Black appeared at the probable-cause hearing, as well as the adjudication hearing, without an attorney, and no appeal was filed from the adjudication order. However, the circuit court found that although Black, as the noncustodial parent, was not present when the incident that led to S.N.'s removal occurred, she was not a fit parent for purposes of custody at that time.
At the first review hearing in March 2017, the circuit court found that Black was not in compliance with the case plan and court orders in that she was unemployed, was behind in child support, had failed to take the steps necessary to attend counseling with her son, and had tested positive for marijuana. Her compliance had not improved significantly as of the July 2017 permanency-planning hearing, and the court questioned whether she could parent S.N. because she had stated in court that it took her a week to function after attending court. Black had custody of another child--S.N.'s younger sister, S.B., throughout all the proceedings concerning S.N.
On August 22, 2017, DHS filed a petition for termination of parental rights alleging that Black was unfit to take custody, that she had failed to provide support, and that further services would not benefit her. DHS also alleged that termination would be in S.N.'s best interest.[1] Eight weeks later, DHS filed a motion for continuance of the termination hearing, asserting that Black had shown "significant improvement over the last couple months and [had] completed most of her services." DHS sought additional time to allow Black to show consistency in her improvement. The court held a hearing on the motion and denied the continuance. As a result, DHS moved for dismissal of its petition, which the court granted. In the resulting order, the court ordered that the case be referred to DHS's Division of Children and Family Services (DCFS) central office and recommended that a new caseworker be assigned who was "independent of the case."
On January 9, 2018, the court held a review hearing and found in the resulting order that Black had an appropriate home and lived with her two-year-old daughter, S.B., and that she had been employed through a temporary service. The order also noted that Black had testified that she had just started a full-time job at the humane society. The circuit court found that a church had been assisting Black in paying her bills and that she was to pay it back at $100 a month; the order also recognized that Black had a driver's permit and a vehicle, that she was visiting S.N. regularly and was attending family counseling, and that she had completed parenting classes. Black also underwent a *522 psychological evaluation and a drug-and-alcohol assessment and completed a drug-and-alcohol safety program for a DWI conviction. However, the circuit court still found that it could not place S.N. with Black, despite commending her for being drug-free, because "she has issues of instability in her parenting and in finances and employment."
On January 10, DHS filed another petition for termination of parental rights, alleging that while Black had been complying with the case plan and testing negative on her drug screens, Black had been relying on her church and its members for financial support and had opened a crowdfunding account on GoFundMe with an underlying falsified story seeking further financial support. DHS also alleged that while S.B. remained in Black's custody, Black had an "inability to parent two children" and that her psychological evaluation indicated "parenting issues."
On March 27, 2018, the court held a hearing on the petition for termination of parental rights. The testimony reflected the history of the case as delineated in the court's orders, although the caseworker added that Black had recently tested positive for marijuana. The caseworker acknowledged, however, that S.B. was left in Black's care and custody even after S.N. had been removed from his father and that S.B. remained there at the time of the termination hearing.
The psychological examiner, Lewis Spray, testified that in his opinion, Black could possibly have issues parenting on a consistent basis--specifically that she might have trouble parenting small children. Charlotte Kraiger, S.N.'s therapist, testified that Black could not meet S.N.'s emotional needs at the time of termination.
Black testified in her defense, presenting a lease agreement and other certificates of completion, such as for a parenting class and a drug-and-alcohol education class stemming from a previous DWI. Black's mother also testified, noting that three-year-old S.B. lived with Black and always had, that Black was her primary caretaker, and that when Black visited with her other children in her home (other children who were not a part of the case), the visits went well.
After the hearing, the circuit court entered an order terminating Black's parental rights. The circuit court found that termination was warranted under three statutory grounds and that termination was in S.N.'s best interest because he would likely find permanency through adoption. The court also found that allowing Black to have custody would subject S.N. to potential harm. Black now appeals.
We review termination-of-parental-rights cases de novo. Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 40 S.W.3d 286 (2001). However, we will not reverse the circuit court's finding of clear and convincing evidence unless that finding is clearly erroneous. Krecker v. Ark. Dep't of Human Servs. , 2017 Ark. App. 537, 530 S.W.3d 393. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, considering the entire evidence, is left with a definite and firm conviction that a mistake has been made. Id. When determining the clearly erroneous question, we give due deference to the opportunity of the circuit court to judge the credibility of witnesses. Id. The appellate court is not to act as a "super factfinder," substituting its own judgment or second-guessing the credibility determinations of the circuit court; we reverse only in those cases in which a definite mistake has occurred. Harris v. Ark. Dep't of Human Servs. , 2015 Ark. App. 508, at 7, 470 S.W.3d 316, 320.
*523 Black's appellate argument that it is not in S.N.'s best interest for her parental rights to be terminated is twofold: she argues that the record does not "demonstrate that S.N.'s health or safety would be at risk if he was placed in his mother's custody and care"; she also asserts that because S.B. remained in Black's custody for the entire case, it cannot be said that returning S.N. to Black would expose S.N. to potential harm. Neither argument is persuasive. The connection that Black attempts to draw between S.N. and S.B. and their best interests is unavailing and speculative. Black asserts, without citation to authority, that "when the bases of the potential harm finding would apply equally to both children--the child out of the home, and the child in the home--and the parent is sufficiently fit to maintain custody of one, then the parent should be given custody of the other."
The case law does not support this assertion. Rather, "when making its best-interest analysis, the circuit court must make an individual determination whether termination is in each child's best interest and cannot treat the children as an amorphous group in which the best interest of one will meet the interests of all." Weatherspoon v. Ark. Dep't of Human Servs. , 2013 Ark. App. 104, at 10, 426 S.W.3d 520, 526 (citing Dominguez v. Ark. Dep't of Human Servs. , 2009 Ark. App. 404 ). This case concerned only S.N. S.N. was first placed in foster care from May 2014 to July 2016 due to Black's substance abuse and inadequate supervision. S.B. was born in 2015 while S.N. was in foster care. We cannot say it was reversible error for the circuit court to give no weight to Black's relationship with S.B. when making its best-interest finding for S.N.
The intent of the Arkansas termination-of-parental-rights statute is to provide permanency in a juvenile's life in all instances in which return to the family home is contrary to the health, safety, or welfare of the child, and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3). A parent's rights may be terminated if a circuit court finds by clear and convincing evidence that it is in the best interest of the juvenile. Ark. Code Ann. § 9-27-341(b)(3)(A). The court must consider the likelihood that the juvenile will be adopted if the termination petition is granted and the potential harm caused by returning the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)-(ii). In the present case, the court, after much consideration, determined that there was a clear likelihood that S.N. would be adopted and that there was a risk of potential harm if returned to Black. Black makes no challenge to the court's finding that S.N. is adoptable; therefore, it is waived on appeal.
When making the decision whether to terminate parental rights, the circuit court has a duty to look at the case as a whole and how the parent has discharged her parental duties, the substantial risk of serious harm the parent imposes, and whether the parent is unfit. In re Adoption of K.M.C. , 62 Ark. App. 95, 969 S.W.2d 197 (1998). The potential-harm analysis is to be conducted in broad terms. Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, 502 S.W.3d 569. A court is not required to positively identify a specific harm or to find that actual harm would result. Reid v. Ark. Dep't of Human Servs. , 2011 Ark. 187, at 14, 380 S.W.3d 918, 925. Black asserts that the court "did not delineate any factual basis to support its potential harm finding ... presumably relying on the facts set out in its findings regarding grounds." It was perfectly proper, however, for the circuit court to simply *524 refer to "the evidence" in its order as the basis for its potential-harm finding. The statutory-grounds portions of the order set out in detail all the evidence against Black, and the same evidence used to support statutory grounds can also support potential harm. See Miller v. Ark. Dep't of Human Servs. , 2017 Ark. App. 396, at 14, 525 S.W.3d 48, 57.
The record demonstrates that Black consistently failed to comply with the circuit court's orders and the case plan. For example, Black was ordered to undergo a drug-and-alcohol assessment, which recommended that she attend outpatient drug treatment. Black did not attend outpatient treatment. She instead took a twelve-hour "safety" course that was not focused on individual sobriety. Over an eighteen-month period, Black was unable to complete the minimum requirements to qualify for outpatient treatment, which included attending twelve individual counseling sessions, attending twelve group sessions, and passing six drug screens.
The circuit court also ordered Black to obtain stable employment and income. But at the time of the termination hearing, she still did not have income sufficient to support two children. She instead was attempting to solicit GoFundMe donations under false pretenses, claiming that she had four or five children, that her house was broken into when the children were home, and that she had been attacked.
A parent's failure to comply with the circuit court's orders in a dependency-neglect case is evidence of potential harm. L.W. v. Ark. Dep't of Human Servs. , 2011 Ark. App. 44, at 13, 380 S.W.3d 489, 497. Partial or even full completion of the case plan is not determinative of the outcome of the termination proceeding. Wright v. Ark. Dep't of Human Servs. , 83 Ark. App. 1, 115 S.W.3d 332 (2003). What matters is whether completion of the case plan achieved the intended result of making a parent capable of caring for the child; mere compliance with the orders of the court and DHS is not sufficient if the roots of the parent's deficiencies are not remedied. Lee v. Ark. Dep't of Human Servs. , 102 Ark. App. 337, 345-46, 285 S.W.3d 277, 282-83 (2008). Black also continued to test positive for drugs throughout the case. As late as two months before the termination hearing, she was still testing positive for marijuana. Case law is clear that a parent's continuing use of illegal drugs during a dependency-neglect case poses a risk of harm to a child. Howell v. Ark. Dep't of Human Servs. , 2017 Ark. App. 154, at 6, 517 S.W.3d 431, 435. There is ample evidence to support the circuit court's best-interest finding that allowing Black to have custody would subject S.N. to potential harm. Accordingly, we affirm.
Affirmed.
Harrison and Brown, JJ., agree.

DHS did not seek to terminate Black's parental rights to S.B.