Cite as 2019 Ark. App. 370

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-19-125

|  |  |
|---|---|
| KENDRA BROWN | **Opinion Delivered** September 11, 2019 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-17-812] |
| V. | |
| | HONORABLE PATRICIA JAMES, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | AFFIRMED |
| APPELLEES | |

## LARRY D. VAUGHT, Judge

Kendra Brown appeals from the November 7, 2018 order of the Pulaski County Circuit Court terminating her parental rights to her twins, daughter KB1 and son KB2 (born October 9, 2011).[1] On appeal, Brown's sole challenge is to the sufficiency of the evidence supporting the court's best-interest finding. We affirm.

On July 11, 2017, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect. The affidavit of the DHS caseworker attached to the petition stated that on July 8, a report was called in to the child-abuse hotline

---

[1]The order also terminated the parental rights of the children's father, Leo Belcher. He consented to the termination of his parental rights, did not appeal the termination order, and is not a party to this appeal.

against Brown alleging medical neglect because of her drug use. The caseworker's investigation revealed that KB2 had suffered a head injury on June 11, 2017, that required stitches. Brown was to return KB2 to the doctor ten days later to remove the stitches, but she did not do so. On July 8, KB2 jumped off a couch and hit his head again, which led to another hospital admission and the child-abuse-hotline call. When asked why she did not return KB2 to the doctor to have his stitches removed, Brown stated that she felt it was not time to take them out and that she was cleaning the stitches herself. The caseworker performed a drug test on Brown on July 8, and the results were positive for THC and cocaine. Brown admitted marijuana use but denied cocaine use. Based on Brown's drug use and medical neglect, the caseworker exercised a hold on the children.

An emergency order was entered on July 12, 2017, and on July 17, the circuit court entered a probable-cause order. On August 28, the circuit court adjudicated KB1 and KB2 dependent-neglected based on the parties' stipulation of (1) medical neglect due to KB2's head injury and (2) parental unfitness due to Brown's drug use and KB1's exposure to drug use after her hair-follicle test was positive for THC and cocaine.[2]

A review order was entered by the circuit court on November 27, 2017, wherein the court noted the testimony of a DHS caseworker that Brown had completed parenting classes and a psychological evaluation, had obtained an apartment, had participated in substance-abuse treatment, and had obtained employment. The circuit court also noted that Brown had tested positive for the prescription medication buprenorphine[3] on October 25, 2017, and that

---

[2]The positive test was based on a sample of hair collected from KB1 on July 10, 2017.

[3]Buprenorphine is a prescription medication used to treat the addiction to opioids.

Brown had not provided a prescription for it. The court found that Brown was making slow progress in the case and continued the goal as reunification.

On March 14, 2018, DHS filed a motion requesting that Brown be allowed unsupervised visitation with her children. DHS alleged that Brown had been cooperative, had completed outpatient treatment in February, and was engaged in services. The circuit court granted this motion the next day.

A permanency-planning order was entered on May 16, 2018. In the order, the circuit court noted that the caseworker had testified that DHS recommended slowly transitioning the children back to Brown's care. The caseworker stated that Brown had completed parenting classes and outpatient treatment, she was working and participating in counseling, and her drug screens had been negative in January, February, and May. In the order, the circuit court noted that Brown's hair-follicle test was positive for THC in November 2017; yet the court continued the goal of reunification and authorized unsupervised visitation with her children away from the DHS office with no overnight visitation until she was negative on a hair-follicle test.

On July 11, 2018, the attorney ad litem filed a motion to modify Brown's visitation, alleging that her July 2018 hair-follicle-test results were positive for "cocaine, benzoylecgonine, and cocaethylene." The circuit court granted the motion the following day and ordered that Brown's visits be supervised at the DHS office.

After a fifteen-month permanency-planning hearing, the court entered an order on July 30, 2018. In this order, the court noted the testimony of the caseworker who had recommended that Brown's parental rights be terminated because Brown had not successfully

3

addressed her drug issues that caused the case to open. The caseworker acknowledged the bond between Brown and her twins and that Brown had completed many of the services offered, but the caseworker had concerns about Brown's positive July 2018 hair-follicle test along with the facts that Brown was seven months pregnant and used drugs during her pregnancy. Brown testified at the permanency-planning hearing that she last used marijuana on July 28, 2017, and she continued to deny cocaine use despite the positive hair-follicle-test results. The circuit court found that Brown was in "deep denial and not understanding (or claiming not to understand) even why the children came into care." The court changed the goal of the case to adoption with termination of parental rights.

DHS and the attorney ad litem filed a joint petition to terminate Brown's parental rights on August 17, 2018. The petition alleged that termination was in the children's best interest and supported by multiple statutory grounds.[4]

On October 3, 2018, the circuit court held a termination-of-parental-rights hearing. Matthew Gerke, manager of A Test Consultants, testified that Brown's hair-follicle-test samples—collected on July 5 and 26, 2018—were positive for cocaine metabolites. Gerke further explained that hair is washed prior to testing and that the cocaine metabolites were found within the hair and had been processed through the body. He stated that the cocaine metabolites were not a substance or powder found on top of the hair.

---

[4]The joint petition alleged the following grounds against Brown: failure to remedy (Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2017); subsequent factors (section 9-27-341(b)(3)(B)(vii)*(a)*; and aggravated circumstances (section 9-27-341 (b)(3)(B)(ix)*(a)(3)(A), (B)(i)*).

Dr. Hugo Morais, the clinical psychologist who performed a forensic psychological evaluation on Brown, testified that he diagnosed her as having major depressive disorder, severe cannabis-use disorder, stimulant-use disorder, and severe and unspecified personality disorder. He recommended that Brown participate in cognitive behavior therapy and dialectical behavior therapy along with psychotropic medication to address the depressive symptoms. He deferred making a reunification recommendation until she had demonstrated sustained abstinence from illicit drugs.

DHS adoption specialist Brenda Keith testified that based on the characteristics of KB1 and KB2, she generated a list of 179 families who were willing to consider adopting children with similar characteristics.

Brown testified that she completed all services offered to her, had a job and an apartment, was no longer using drugs, and had learned the importance of avoiding environments where people used drugs. She said that she regularly visited the children and has a strong bond with them. Brown further testified that in August 2018, she gave birth to a baby girl. Brown stated that she did not know whether she or her baby were drug screened at the hospital. She said that DHS had been to her home since the baby was born and had not expressed any concerns with regard to the baby.

Brown admitted prior marijuana use but claimed that she had not used marijuana since July 28, 2017. She also admitted that cocaine was in her system in July 2018, but she denied using cocaine except for once when she was sixteen. She said the positive test for cocaine must have come from being around a friend.

5

DHS caseworker Ka'Neisheia Cobbins testified that Brown had completed services in the case, which included a drug-and-alcohol assessment, drug screening, parenting classes, individual counseling, and a psychological evaluation. She said that Brown had also maintained stable housing, had visited the children regularly, and has a bond with them. Cobbins also testified that Brown failed to maintain sobriety. Cobbins stated that Brown had urine tests that were positive for THC on July 17, August 29, and December 27, 2017; she had urine tests that were positive for buprenorphine on October 25, 2017 and January 10, 2018; she had a hair-follicle test that was positive for THC on November 15, 2017; and hair-follicle tests that were positive for cocaine on July 5 and 26, 2018. Cobbins stated that Brown did not provide a prescription for the buprenorphine.

Cobbins further stated that because of Brown's continued drug use, KB1 and KB2 were at risk of potential harm if placed in Brown's custody, and Cobbins opined that it was in the children's best interest to terminate Brown's parental rights. Cobbins also said that she had visited Brown's home three times since the birth of her new baby and that DHS had no health and safety concerns for the two-month-old. She confirmed that DHS did not drug test Brown or her new baby upon her birth because DHS was unaware of the birth. She offered no reason for not drug testing the baby after her birth. Cobbins also said that the twins were not currently placed together because of sexual behaviors expressed between them.

Finally, Michelle Trulsrud, the court appointed special advocate (CASA), testified that Brown reported in September 2018 that she and her new baby had been drug tested upon the baby's birth and that the results were negative. Trulsrud testified that Brown's report was contrary to her testimony at the hearing.

6

On November 7, 2018, the circuit court entered an order terminating Brown's parental rights based on all three statutory grounds alleged against her. The circuit court also found that termination was in the children's best interest considering both the likelihood the children will be adopted and the risk of potential harm they would face if returned to Brown. This appeal followed.

This court's review of cases involving the termination of parental rights is de novo. *Brown v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 497, at 3, 529 S.W.3d 275, 278. Grounds for termination must be proved by clear and convincing evidence, which is such a degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.*, 529 S.W.3d at 278. Our inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* Credibility determinations are left to the fact-finder. *Id.*, 529 S.W.3d at 278.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Id.* at 3–4, 529 S.W.3d at 278. The first step requires proof of one or more statutory grounds for termination. Brown does not challenge the statutory grounds for termination. The second step, the best-interest analysis, includes consideration of the likelihood the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* at 4, 529 S.W.3d at 278. In determining potential harm, which is forward-looking, the court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Id.*, 529 S.W.3d at 278. There is no requirement to establish every factor by

7

clear and convincing evidence; after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child. *Id.*, 529 S.W.3d at 278.

Brown does not challenge the circuit court's adoptability finding. Instead, she asserts that the circuit court's finding of potential harm is not supported by sufficient evidence. Specifically, she argues that the court erred in basing its potential-harm finding solely on one failed drug test (for cocaine) in July 2018 when the evidence showed that she otherwise completed all services and complied with the case plan. She points to her testimony that she denied intentionally using cocaine and suggests that she unknowingly consumed it in a drink or was in proximity to a friend who used cocaine. She argues that one failed drug test does not demonstrate that she poses a potential risk of harm to her children.

Contrary to Brown's argument, the evidence demonstrates that she tested positive for drugs more than just one time in July 2018. The evidence shows, and the circuit court found, that she tested positive for drugs throughout the pendency of the case. She was positive for THC on July 17, August 29, November 15, and December 27, 2017; for buprenorphine on October 25, 2017 and January 10, 2018; and for cocaine metabolites on July 5 and 26, 2018. Brown admitted she used marijuana on July 28, 2017, and she offered no evidence of a prescription for the buprenorphine. While she denied cocaine use, the circuit court found that Brown's denial lacked credibility. The court also found Gerke's testimony—that the presence of cocaine metabolites indicates that the drug has been ingested and processed through the body and not merely present as surface residue—credible. Credibility determinations are left to the fact-finder. *Brown*, 2017 Ark. App. 497, at 3, 529 S.W.3d at 278.

8

KB1 and KB2 came into DHS custody because of Brown's parental unfitness due to her drug use. At that time, KB1 tested positive for THC and cocaine metabolites based on her exposure to drug use, and KB2, who had suffered two recent head injuries, was not receiving proper medical treatment. Clearly, Brown's drug use subjected KB1 and KB2 to harm. Brown's drug use throughout the pendency of this case continued to be a potential risk of harm to KB1 and KB2 because, as found by the circuit court, she "completely lacks insight about her addiction." The court found that Brown blamed her positive drug screens on others. The court also cited Brown's testimony that in the past she smoked marijuana outside her home while the children were playing outside and did not see any problem with doing so. Brown testified that now she sees it as a problem only because other people think it is a problem.

Our court has held that a parent's continuing use of illegal drugs during a dependency-neglect case poses a risk of harm to a child. *Black v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 518, at 10, 565 S.W.3d 518, 524; *Howell v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 154, at 6, 517 S.W.3d 431, 435; *Allen v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 288, at 10, 384 S.W.3d 7, 12; *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, at 9, 378 S.W.3d 290, 295. Further, a court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Howell*, 2017 Ark. App. 154, at 6, 517 S.W.3d at 435. Accordingly, we hold that the circuit court did not clearly err in finding that termination of Brown's parental rights was in the best interest of KB1 and KB2.

Brown also argues that the evidence shows that KB1 and KB2 would not be at risk of potential harm in her custody because she has been caring for another child she had given

birth to in August 2018 (two months prior to the termination hearing) without incident. Brown posits that DHS had visited her home three times and had no concerns for the new baby's safety. She further points out that DHS has not opened a case on the new baby. We reject this argument.

In *Black*, 2018 Ark. App. 518, at 7, 565 S.W.3d at 523, the appellant argued that because a younger sibling of the juvenile who was the subject of a dependency-neglect case remained in the appellant's custody throughout the proceedings, the circuit court's potential-harm finding was clearly erroneous. The appellant argued that the bases for the potential-harm finding should apply equally to both children and that if the parent is sufficiently fit to maintain custody of one, then the parent should be given custody of the other. *Id.* at 7, 565 S.W.3d at 523. Our court rejected this argument, stating, "[W]hen making its best-interest analysis, the circuit court must make an individual determination whether termination is in each child's best interest and cannot treat the children as an amorphous group in which the best interest of one will meet the interests of all." *Id.*, 565 S.W.3d at 523 (citing *Weatherspoon v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 104, at 10, 426 S.W.3d 520, 526; *Dominguez v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 404). We held it was not reversible error for the circuit court to give no weight to the appellant's relationship with a younger sibling at home when making its best-interest finding for the juvenile in DHS custody. *Id.*, 565 S.W.3d at 523. Similarly, we hold that it was not reversible error for the circuit court in the case at bar to give no weight to Brown's relationship with the new baby in her custody when making its best-interest finding regarding KB1 and KB2.

Finally, Brown argues that the circuit court erred in failing to consider, in its best-interest determination, how termination would affect the sibling relationship between the twins and their baby sister and the sibling relationship between the twins. Keeping siblings together is an important consideration but is not outcome determinative, as the best interest of each child is the polestar consideration. *Allen-Grace v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 286, at 9, 577 S.W.3d 397, 402.

Here, the evidence that supports the potential-harm prong of the circuit court's best-interest finding is substantial: Brown continued to use illegal drugs throughout the dependency-neglect case; the DHS caseworker testified that the twins would be at risk of potential harm if returned to Brown's custody; the CASA report recommended termination of Brown's parental rights based on her drug use and its negative effect on KB1 and KB2; and Dr. Morais deferred making a reunification recommendation until Brown had demonstrated sustained abstinence from illicit drugs.

In contrast, there is little to no evidence of a genuine relationship or bond between the twins and their baby sister. KB1 and KB2 were six years old and in foster care when their baby sister was born. Their only contact with their baby sister was when she was one to two months old during visitation with Brown. Much more evidence of a genuine sibling bond is required to reverse a best-interest finding based on the severance of a sibling relationship. *See Clark v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 223, 575 S.W.3d 578 (reversing the circuit court's best-interest finding because there was evidence that the juveniles, who had visited often and had a genuine bond, were more than legal siblings). Likewise, there is no evidence to support Brown's argument that termination of her parental rights will affect the twins' relationship.

11

The adoption specialist testified that she identified 179 families who were willing to consider adopting the twins together. For all these reasons, we hold that the circuit court did not clearly err in finding that termination of Brown's parental rights was in the best interest of KB1 and KB2.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.