
# ARKANSAS COURT OF APPEALS

DIVISION IV
№ CV-17-419

| | |
|---|---|
| TIMOTHY BROWN<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | **Opinion Delivered:** October 4, 2017<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT<br>[NO. 17JV-15-57]<br><br>HONORABLE MICHAEL MEDLOCK, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Timothy Brown appeals from the February 24, 2017 order of the Crawford County Circuit Court terminating his parental rights to his daughter, E.B. (DOB: 02/06/2015).[1] On appeal, Brown's sole challenge is the court's best-interest finding. He argues that there was insufficient evidence presented to establish the adoptability prong of the best-interest analysis and that evidence failed to demonstrate termination was in E.B.'s overall best interest. For the following reasons, we affirm.

On February 27, 2015, the Arkansas Department of Human Services ("DHS") filed a petition for emergency custody and dependency-neglect. An emergency order was entered the same day, which placed custody of E.B. with DHS. On March 5, 2015, the circuit court

---

[1]The order also terminated the parental rights of E.B.'s mother, Haley Elizabeth Mills. She consented to her termination of parental rights and thereafter did not appeal the termination order. Thus, she is not a party to this appeal.

found probable cause that E.B. was dependent-neglected and that the emergency situation that necessitated removal of the juvenile continued such that it was necessary for the juvenile to remain in the custody of DHS until the adjudication hearing. On April 9, 2015, the circuit court adjudicated E.B. dependent-neglected due to parental unfitness because of the mental-health issues of her mother, Haley Mills.

After E.B. was born at home, she was seen at the hospital, and hospital workers were concerned with the ability of E.B.'s mother to properly care for the child. E.B. had a blueish discoloration on her right eye and eyelid, and she tested positive for morphine. While in the hospital, Mills was not cooperative and did not appropriately care for or bond with E.B. Timothy Brown was identified as E.B.'s father and was incarcerated at the time of the removal. In a review order entered on October 1, 2015, the court found that Brown is E.B.'s legal father and that he had been paroled to Mills's house.

A permanency-planning hearing was held on February 4, 2016, and at it, the court found that Brown had not complied with the case plan and noted that although he had been paroled to Mills's home, the relationship had become volatile and erupted into verbal altercations during visitations. In November 2015, he stopped visiting E.B. and had had no contact with DHS since that time. In the February 4 order, the circuit court also changed the case goal to adoption with termination of parental rights, and Brown was appointed an attorney. DHS filed a petition to terminate parental rights on August 31, 2016.

On January 19, 2017, the circuit court held a hearing on the termination petition, and Brown, who was incarcerated at the time, testified. Brown stated that he believed he had relatives who were interested in having E.B. placed in their care, including his

stepmother, Janie Brown. He testified that, to his knowledge, Janie asked DHS to perform a home study but that DHS refused to do so. Janie did not testify at the hearing; nor did any of Brown's family members.

K.C. Oliver, the DHS caseworker assigned to the case, testified at the termination hearing. She explained that E.B. had tested positive for morphine and had been diagnosed with laryngomalacia. Oliver testified that this disorder made it difficult for E.B. to swallow, eat, or breathe. Oliver explained that E.B. was getting healthier due to medical treatments and was having a "new button" put in the day of the hearing.[2] Oliver also testified as to E.B.'s adoptability, answering, "E.B. is adoptable. Like I said, she's getting healthier by the day and she's happy."

In an order entered on February 24, 2017, the circuit court terminated Brown's parental rights, finding that there was a likelihood that E.B. would be adopted and that termination was in E.B.'s best interest. Brown timely filed a notice of appeal.

This court's review of cases involving the termination of parental rights is de novo. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, 451 S.W.3d 231. Grounds for termination must be proved by clear and convincing evidence, which is such a degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id*. Our inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id*. Credibility determinations are left to the fact-finder. *Id*.

Termination of parental rights is a two-step process requiring a determination that

---

[2]The record does not reflect any definition of this term.

the parent is unfit and that termination is in the best interest of the child. *Houseman v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 227, at 2, 491 S.W.3d 153, 155. The first step requires proof of one or more statutory grounds for termination; the second step, the best-interest analysis, includes consideration of the likelihood the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Norton v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 285. In determining potential harm, which is forward-looking, the court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Harbin, supra.* There is no requirement to establish every factor by clear and convincing evidence; after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child. *Id.*

Brown does not challenge the statutory grounds for termination. He contends only that the circuit court committed reversible error when it terminated his rights because there was a lack of evidence introduced to establish the adoptability of E.B. In making a best-interest determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody is returned to a parent. *Miller v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 239, 492 S.W.3d 113. While the likelihood of adoption must be considered by the circuit court, that factor is not required to be established by clear and convincing evidence. *Caldwell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 144, 484 S.W.3d 719 (citing *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495). A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. *Id.*

Brown argues that the caseworker's statement that "[E.B.] is adoptable. Like I said, she's getting healthier by the day and she's happy" is not evidence of adoptability and maintains that "this conclusory statement was insufficient to be considered sufficient evidence that there was a likelihood that this child would be adopted under *Grant* or *Kerr*."

In *Grant v. Arkansas Department of Human Services*, 2010 Ark. App. 636, 378 S.W.3d 227, our court reversed a termination order where the only evidence of adoptability was a caseworker's opinion that the child was adoptable because "all children are adoptable." *Id.* at 13, 378 S.W.3d at 233. The child in *Grant* suffered from autism, and the condition was not considered in determining whether he was adoptable. *Id.* The record showed that it had been impossible to find a foster placement for the child in the same county as the parent, that the foster parent had no interest in adopting him, and that the caseworker offered only one email contact regarding a person who might be interested in adopting a child with autism. *Id.*

In *Kerr*, this court reversed the circuit court's best-interest finding because the only evidence regarding adoptability was that of the child, who testified that she wanted her mother's rights terminated and that she wanted her foster parents to adopt her sibling and her. *See Kerr v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 271, at 8, 493 S.W.3d 342, 347. As our court held, "This simply does not constitute evidence regarding the *likelihood* that the children will be adopted." *Id.* (Emphasis in original.)

Such is not the case here. The circuit court considered, and made its best-interest finding based on, the testimony of DHS caseworker Oliver, who testified in detail about E.B.'s diagnosis of laryngomalacia and how she had improved before concluding that she is

adoptable. When asked about E.B.'s medical progress, Oliver answered that the child was "getting a little healthier by the day," was happy in her placement, and was bonding very well with her foster family. Oliver further noted that E.B. had undergone several medical treatments and was receiving a "new button" later that day. This testimony is sufficient to affirm the circuit court's best-interest finding because it was specific to the juvenile's individual characteristics. *See Stanley v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 581, 507 S.W.3d 544.

Furthermore, based on Oliver's testimony, the circuit court specifically noted in the termination order that E.B. "possessed improving health and medical conditions with prospects for a brighter future, as the infant grows and is cared for appropriately, enhancing her adoptability with fewer and fewer barriers to adoptability foreseen." We give great deference to the circuit court's findings and will not reverse a circuit court unless it is clear that the circuit court made a mistake. *E.g.*, *Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251. Here, the circuit court did not make a mistake in finding that E.B. is adoptable; therefore, we affirm on this point.

Brown also argues that the evidence was insufficient to demonstrate that termination was in E.B.'s overall best interest where termination severed the relationship between E.B. and her relatives and where relatives were available to provide permanency for E.B. In support of this argument, Brown cites *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, and the well-established principle that relative interests are derived from the rights of parents. However, this case is distinguishable from *Caldwell*, where the juvenile had been placed into the temporary custody of the paternal grandparents for several

months prior to being returned to the custody of the mother by the time of the termination hearing.[3]

Here, there is no evidence to show that E.B. had a relationship with any relative. There was no testimony presented to indicate that terminating Brown's parental rights would extinguish the interest of any relative who was the juvenile's legal custodian, had previously been the juvenile's legal custodian, or had otherwise stood *in loco parentis* to the juvenile. Brown simply stated that he believed he had relatives who were interested in having E.B. placed in their care and specifically mentioned his stepmother, Janie Brown. But Janie did not testify at the hearing, and there was no evidence to show that any relationship existed between E.B. and Janie, or any other relative for that matter. Unlike in *Caldwell*, the circumstances in the instant case do not establish that the best-interest finding was clearly erroneous. Accordingly, we affirm.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

---

[3]When the circuit court returned the juvenile to the mother's custody based on the finding she had complied with the case plan, the paternal grandmother was awarded standard, alternating weekend visitation with the child. The court further found that the termination of the appellant's parental rights should not affect the rights of the paternal grandmother, who was found to have "stood *in loco parentis* to [the juvenile] and was the primary caregiver for a time." *Caldwell*, 2010 Ark. App. 102, at 5.