

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-17-557

DERRICK CONNORS

APPELLANT

V.

ARKANSAS DEPARTMENT OF
HUMAN SERVICES AND MINOR CHILD

APPELLEES

**Opinion Delivered** November 1, 2017

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT,
ELEVENTH DIVISION
[NO. 60JV-15-725]

HONORABLE PATRICIA JAMES,
JUDGE

AFFIRMED

## LARRY D. VAUGHT, Judge

Derrick Connors appeals the Pulaski County Circuit Court's termination of his parental

rights to his son, K.T.[1] On appeal, he challenges only the court's best-interest finding, arguing

that the Arkansas Department of Human Services (DHS) failed to introduce sufficient

evidence of K.T.'s adoptability and that the court failed to consider placement with a relative.

We disagree and affirm.

DHS placed an emergency seventy-two hour hold on K.T. and his two half-siblings,

J.T. and B.P., after his mother and B.P. both tested positive for illegal drugs at the time of

B.P.'s birth. The children's mother admitted using PCP during her pregnancy. Connors was

and remained incarcerated throughout this case. The juveniles were adjudicated dependent-

---

[1]Although the circuit court also terminated the biological mother's rights to all three children and terminated two other men's parental rights to K.T.'s half-siblings, J.T. and B.P., this appeal concerns only the court's termination of Connors's parental rights to K.T.

neglected, and the case proceeded through several review and permanency-planning hearings. At one such hearing, Connors was held in criminal contempt of court for three separate outbursts. At another hearing, he appeared but stated that he did not want to be there and left.

Following a hearing on DHS's first termination petition, the court terminated the parental rights of two other parents involved in the case but denied the petition as to Connors because it found that DHS had failed to introduce sufficient evidence that services had been provided to Connors in prison or as to the length of his sentence. After the filing of a second termination petition and a hearing, the court granted DHS's petition and terminated Connors's parental rights. This appeal followed.

Termination-of-parental-rights cases are reviewed de novo. *Hune v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 543. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 248, 947 S.W.2d 761, 763 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*, 947 S.W.2d at 763. In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 352, 201 S.W.3d 391, 399 (2005). Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Meriweather v. Ark. Dep't of Health & Human Servs.*, 98 Ark. App. 328, 331, 255 S.W.3d 505, 507 (2007).

On appeal, Connors does not challenge the court's findings as to the statutory grounds for termination; he argues only that the court's best-interest determination was clearly erroneous because (1) there was insufficient evidence of adoptability and (2) it did not consider relative placement as an alternative. As to adoptability, Connors specifically argues that, although a DHS caseworker testified that she had run K.T.'s characteristics through a computer database of potential adoptive parents and found 125 families that would be interested in adopting children like K.T., this evidence failed to take into account K.T.'s sexual aggression.

This argument fails for two reasons. First, adoptability is not an element that must be proved but is simply a factor that must be considered in determining the child's best interest. A best-interest finding under the Arkansas Juvenile Code must be based on the consideration of two factors, the first of which is the child's likelihood of adoption. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) (Repl. 2015). Adoptability is not a required finding, and likelihood of adoption does not have to be proved by clear and convincing evidence. *Duckery v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 358, at 5–6. We have previously explained that the Juvenile Code does not require "any 'magic words' or a specific quantum of evidence" to support a finding as to likelihood of adoption. *Sharks v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 435, at 8, 502 S.W.3d 569, 576. The law simply requires that the court consider adoptability and that if there is an adoptability finding, there must be evidence to support it. *See Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28, at 4 (reversing a best-interest determination because no evidence of adoptability was introduced and the court failed to consider adoptability). The fact that adoptability is not a required element is consistent with the rule that termination of

parental rights is proper even when there is little likelihood of adoption, if it is in the child's best interest. *McDaniel v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 263, at 4–5. Here, there is no dispute that the court considered adoptability and that evidence was presented on the issue.

Connors's sole argument is that the evidence of adoptability was insufficient because it failed to account for K.T.'s specific characteristics. Connors fails to cite any cases requiring such precision and specificity, nor are we aware of such precedent. Instead, Connors argues that this case is akin to *Grant v. Arkansas Department of Human Services*, 2010 Ark. App. 636, at 13, 378 S.W.3d 227, 233, in which we reversed a best-interest finding that was based solely on a caseworker's testimony that "all children are adoptable" and failed to take into account the child's autism. In the present case, unlike in *Grant*, DHS presented specific evidence as to K.T.'s adoptability. The caseworker testified that when she ran the adoptability match, she selected for specific characteristics, such as K.T.'s age, race, and status as a member of a sibling group. Moreover, she testified about why she did not include sexual aggression in running the adoption match, which provided the circuit court with ample evidence to consider whether sexual aggression should have been included in the adoptability match.

Connors's argument also fails because the DHS caseworker explained that she had not included sexual aggression for a very good reason: K.T. is not sexually aggressive. The evidence revealed that DHS had twice submitted K.T. for professional evaluations for sexual aggression and that both evaluations determined that he was not sexually aggressive and needed no treatment for sexual aggression. In fact, the intake report from Bridgeway, indicating that K.T. was not sexually aggressive, had previously been entered into evidence at a prior hearing without objection from Connors. As such, we see no error on this point.

Connors's second point on appeal is that the court failed to consider potential relative placement as an alternative to termination when making its best-interest finding.[2] Specifically, he argues that his sister was interested in taking K.T. but that the court terminated his parental rights before DHS could determine if placement was appropriate. However, the evidence showed that Connors's sister did not present herself to DHS as a potential placement until after the children had been in DHS custody for over twenty months. At the time of the hearing, she had not completed the necessary steps for placement, including a home study and background checks.[3] Connors's sister did not testify at the hearing, although he indicated that she was in the courthouse.

We disagree with Connors's argument that this case is controlled by *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102. In *Caldwell*, we reversed the termination of a father's parental rights because the child had been placed in the custody of the paternal grandmother for several months before being returned to the mother's custody at the time of the termination hearing, had achieved permanency with the mother, and risked losing a bond with the paternal grandmother should the father's rights be terminated. 2010 Ark. App. 102, at 5. The present case is more akin to *Brown v. Arkansas Department of Human Services*, 2017 Ark. App. 497, at 7, in which we distinguished *Caldwell* and held that a circuit court's best-interest

---

[2]While Connors does not raise this issue as a separate point on appeal, instead discussing it along with adoptability, we understand it to be sufficiently separate to warrant independent analysis.

[3]We note, however, that the caseworker testified that since coming forward as a possible placement, the woman had done everything required of her. Responsibility for the delay in completing the home study and background checks seems to fall, at least in part, on DHS.

finding was not clearly erroneous when there was no evidence that the child had achieved permanency and had a relationship with any relative whose rights would be at risk due to termination. K.T. had not yet achieved permanency, and there was no evidence that K.T. had a meaningful bond with Connors's sister. Moreover, as in *Gyalog v. Arkansas Department of Human Services*, 2015 Ark. App. 302, at 8, 461 S.W.3d. 734, 739, "the facts of this case indicate that placement with [a relative] was far from an immediately available alternative." K.T. had been in foster care for almost two years, was struggling in foster care, and needed permanency. We find no reversible error in the court's finding that termination was in K.T.'s best interest.

Affirmed.

HARRISON and GLOVER, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor child.