RAYMOND R. ABRAMSON, Judge
Jonathan Nichols and Whitney Dubar (now Nichols) separately appeal the Sebastian County Circuit Court order terminating their parental rights to their son, B.N. Whitney also appeals the termination of her parental rights to her children, A.D., H.P., and G.D.[1] On appeal, they both argue that the circuit court erred in finding that (1) it was in the children's best interest to terminate their parental rights and (2) a statutory ground supported termination. We affirm.
On September 3, 2015, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody of A.D., H.P., and G.D. The petition listed Whitney as the mother. Jonathan is not the father of the children but was Whitney's live-in boyfriend when the petition was filed.
In the affidavit attached to the petition, DHS alleged that it had opened a protective-services case on August 27, 2015, as a result of Jonathan's spanking H.P., which left a large bruise on the back of her leg. The affidavit further stated that DHS had contacted Whitney and Jonathan on August 31, 2015, at the hotel where the family was living, after receiving a report that Whitney had inadequate food for the children. Whitney admitted posting on Facebook that she had no formula for G.D. She submitted to a drug screen and testified positive for THC. She also learned that she was pregnant with B.N. She further admitted that she had medications for her anger but had not been seeking treatment. A chaplain arrived with formula and food donations, so DHS left the children in Whitney's custody. DHS returned to the hotel on September 1, 2015, to check on the welfare of the children, but Whitney and Jonathan had moved out of the hotel around midnight the night before and had left all their belongings. DHS attempted to contact Jonathan, but he disconnected the call. The circuit court entered an ex parte order of emergency custody on the same day the petition was filed.
*200 On September 8, 2015, the court entered a probable-cause order, and on October 13, 2015, the court adjudicated the children dependent-neglected based on abuse, neglect, and parental unfitness. In the adjudication order, the court found that DHS had made reasonable efforts to prevent removal of the children.
On March 1, 2016, the court held a review hearing[2] and noted that Whitney and Jonathan had married. The court found that Whitney was complying with the case plan and court orders. Specifically, she was attending parenting classes and had completed a psychological evaluation and a drug-and-alcohol assessment. The court ordered Whitney to notify DHS when she went into labor and noted that an emergency hold of the child would be taken. The court further noted that Jonathan was attending parenting classes and had completed a psychological evaluation. The court ordered him to complete domestic-violence classes. The court further found that DHS had made reasonable efforts to provide family services.
On March 13, 2016, Whitney gave birth to B.N., and on March 15, 2016, DHS filed a petition for emergency custody and dependency-neglect of the child. The petition listed Whitney as the mother and Jonathan as the legal father. In the affidavit attached to the petition, DHS alleged that the hold resulted from the dependency-neglect case involving Whitney's other children. On the same day the petition was filed, the circuit court entered an ex parte order for emergency custody. On April 1, 2016, the court entered a probable-cause order.
On April 19, 2016, the court adjudicated B.N. dependent-neglected based on the parties' stipulations. In the adjudication order, the court found that Whitney and Jonathan had been complying with the case plan and court orders. Specifically, Whitney had completed parenting classes and was participating in the twelve-week program recommended in her drug-and-alcohol assessment. The court also noted that DHS had made new referrals for domestic-abuse counseling and parenting-without-violence and parenting-forever classes. As to Jonathan, the court found that he was working to complete domestic-violence, parenting-without-violence, and parenting-forever classes. The court found that DHS had made reasonable efforts to provide family services.
On August 4, 2016, the court held a permanency-planning hearing. The court found that Jonathan and Whitney had housing and income but no transportation. The court noted that Whitney had completed the recommended drug treatment from her assessment. The court ordered both Jonathan and Whitney to complete parenting-without-violence classes. The court further found that DHS had made reasonable efforts to provide family services.
On November 3, 2016, the court held a fifteen-month review hearing. At that hearing, the court continued the goal of the case to be reunification with a concurrent goal of adoption following termination of parental rights. On December 30, 2016, DHS filed a petition for termination of Jonathan's and Whitney's parental rights. It alleged the aggravated-circumstances ground against both Jonathan and Whitney. The court held a termination hearing on February 2, 2017.
At the hearing, Whitney testified that she and Jonathan had moved into a two-bedroom *201 apartment in Van Buren on December 1, 2016. She explained that her mother and stepfather had previously lived in the apartment but that she recently evicted them because of a disagreement. She noted that only she and Jonathan are listed on the lease agreement.
Whitney testified that her current combined income with Jonathan is $1400 a month and that their source of income is Social Security disability benefits. She stated that she has reliable transportation through her cousin. She did not have a vehicle and did not have a driver's license due to unpaid fines for a disorderly-conduct charge.
Whitney explained that she had visitation with her children every Wednesday for two hours and that the visits went well, but the children often appeared with bruises or boils. She testified that she had completed parenting classes but had not completed parenting-without-violence classes; she could not recall how many more classes she needed to attend to complete the program.[3] She testified that in the parenting classes, she had learned to appropriately discipline her children. She stated that she had completed a drug-and-alcohol assessment and its recommendation of twelve weeks of Narcotics Anonymous meetings; she actually completed sixteen weeks of meetings. She noted that she had not completed counseling because DHS had not made a referral.
She further discussed her and Jonathan's relationship with the DHS caseworker, Karen Pearson. She stated that she had requested a new caseworker because Pearson is disrespectful to them and initiates fights in the children's presence. She testified about an incident in which Pearson had critiqued how she fed one of the children during a visitation and she became aggravated with Pearson. Whitney acknowledged that she had responded inappropriately, and she apologized for her actions.
Jonathan testified that he had been arrested for disorderly conduct, assault, and failure to pay fines during the pendency of the case. As to the assault charge, he explained that it involved a neighbor who had been harassing him but that he and Whitney had since moved and the issue had been resolved. He testified that he did not have a driver's license and that due to his disability, he is unable to understand or retain the information necessary to obtain a license. He stated that Whitney would obtain a license. He testified that his visitations with the children had gone well but that he had also noticed the bruises and the boils on them. He admitted that he had spanked the children frequently in the past but stated that he had learned to appropriately discipline the children through the parenting classes; he does not "believe" in spanking the children anymore. He agreed with Whitney that they had not attended counseling sessions because they had not received a referral from DHS.
Jessica Arden, a program assistant at DHS, testified that she had observed Whitney and Jonathan's visits with the children. She stated that Jonathan became bored during some visits and had ended a visitation early because he was uninterested in visiting only two of the children. She also discussed a visit during which Jonathan reported to her that he was hungry because they were waiting for their disability checks to arrive. On cross-examination, she acknowledged that Jonathan suffers *202 from ADD and that the disability could hinder his concentration.
Joshua Henley, also a program assistant with DHS, testified that he had observed fourteen of Jonathan and Whitney's visitations and that he had witnessed Whitney "whip" the children on two occasions. Specifically, on February 19, 2016, he saw Whitney hit H.P.'s leg, and on November 16, 2016, he saw Whitney spank A.D. On both occasions, he informed Whitney that that form of discipline was not allowed. Henley further testified that Whitney's discipline of the children was not consistent and that she and Jonathan sometimes become irritated with each other.
Karen Pearson testified that she had a good relationship with Whitney and Jonathan until DHS filed the petition for termination of their parental rights. She also testified that she had referred them for counseling at Western Arkansas Guidance on November 4, 2016, but that they had not attended the sessions. She testified that she had called Whitney and notified her that the referral had been made.
Pearson voiced concerns with both Whitney's and Jonathan's anger problems. She explained that Jonathan has aggression issues and that Whitney cannot calm him. She referenced a staffing meeting where Whitney and Jonathan became upset with her, pushed a table, and stormed out of the room. She also testified that Jonathan had approached her in an aggressive manner when a visitation was canceled because he spoke negatively about DHS. She noted that Whitney became angry and that, from inside the building, she could hear Whitney yelling on the street. She further testified that Jonathan had left her a voicemail threatening to "blow up" her and the DHS building.
Pearson stated that Whitney and Jonathan had completed services, but she did not believe the services had benefited them. Specifically, Pearson did not believe that Whitney and Jonathan had learned to properly parent and discipline the children. She testified that the children are adoptable and that all of their placements had expressed interest in adopting them.
Brandon Chancey, G.D.'s foster parent, testified that when G.D. returns from a visit with Whitney and Jonathan, she suffers from high anxiety for about twenty-four to forty-eight hours. Chancey also discussed comments Whitney and Jonathan had made to him about the children. Specifically, they told him that the children's removal from their custody had been a "vacation" and that "no one wants the older two children because they are too much of a handful." They had also laughed and bragged to him about "telling Karen [Pearson] off." Chancey further testified that Jonathan stated that he is worried only about B.N. returning to his custody, not Whitney's other children.
Courtney Sweeney, A.D. and H.P.'s foster parent, testified that when A.D. and H.P. return from a visitation, they exhibit behavioral issues such as biting themselves and banging their heads against furniture and walls. She believed their behavioral changes could have been the result of seeing Whitney and Jonathan.
At the conclusion of the hearing, the circuit court orally terminated Whitney's and Jonathan's parental rights, and on June 30, 2017, the court entered a written termination order. The court found that the aggravated-circumstances ground supported termination. Specifically, the court found that there was little likelihood that services to the family would result in successful reunification because of Whitney's and Jonathan's "anger issues and violent tendencies." The court noted that it had observed "extreme levels of frustration" and "explosive anger" from Whitney *203 and Jonathan and that they had failed to complete parenting-without-violence classes. The court further found it was in the best interest of the children to terminate their parental rights; that the children were adoptable; and that the children would be subjected to a great risk of potential harm if returned to Whitney and Jonathan's custody based on their unresolved anger issues, which the court found presented an emotional and physical danger to the children. Jonathan and Whitney separately appealed the termination order.
We review termination-of-parental-rights cases de novo. Lively v. Ark. Dep't of Human Servs. , 2015 Ark. App. 131, 456 S.W.3d 383. It is DHS's burden to prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights as well as the existence of at least one statutory ground for termination. Id. On appeal, the inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. Id. We give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. Id. The termination of parental rights is a two-step process. The circuit court must find by clear and convincing evidence (1) the existence of one or more statutory grounds for termination and (2) that termination is in the best interest of the children. Wafford v. Ark. Dep't of Human Servs. , 2016 Ark. App. 299, 495 S.W.3d 96.
Jonathan and Whitney both argue that the circuit court erred in finding that the aggravated-circumstances ground supported termination. Whitney argues that the evidence is insufficient to show that there is "little likelihood" that services to her would result in successful reunification, because she complied with the case plan and court orders and benefited from DHS services. She further points out that the court relied on her anger problems in terminating her parental rights but that DHS did not make a referral for counseling until November 4, 2016, only a month before DHS filed its termination petition.[4]
Jonathan asserts similar arguments on appeal. He argues that the evidence is insufficient to show that he did not benefit from DHS services and claims that there is no evidence that he displayed inappropriate parenting skills in the children's presence. Jonathan further argues that DHS failed to offer him timely and appropriate services based on his disability in violation of the Americans With Disabilities Act (ADA).
"Aggravated circumstances" means, among other things, that a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(ix)(a)(3)(B)(i) (Repl. 2015). We have held that a finding of aggravated circumstances is not clearly erroneous when the evidence shows that a parent has not demonstrated that she has benefited *204 from DHS services. See Brandau v. Ark. Dep't of Human Servs. , 2017 Ark. App. 87, 512 S.W.3d 636.
We hold that the circuit court did not err in finding that the aggravated-circumstances ground supported termination. The court concluded that, after receiving a year of services, Whitney and Jonathan had not addressed their anger problems. The evidence showed that Whitney and Jonathan had violent altercations with a DHS caseworker; Jonathan had been arrested for disorderly conduct and assault; Whitney had been arrested for disorderly conduct; and DHS workers had observed their aggressive behavior during visitations. Moreover, the circuit court observed their volatile temperament in the courtroom on the day of the termination hearing. Furthermore, Whitney and Jonathan were not in full compliance with the case plan: they failed to complete parenting-without-violence classes.
As to their arguments that DHS failed to offer them timely and appropriate services, the circuit court made findings throughout the case that DHS had provided them with reasonable services, and Whitney and Jonathan failed to object to those findings at the termination hearing; thus, they have waived the issue on appeal. See Yarbrough v. Ark. Dep't of Human Servs. , 2016 Ark. App. 429, 501 S.W.3d 839 (holding that an appellant waived the issue of whether appropriate services were provided to him when he failed to object to a prior reasonable-efforts finding at the termination hearing).[5]
Both Jonathan and Whitney also argue that the circuit court erred in finding that it was in the children's best interest to terminate their parental rights. Whitney asserts the adoptability finding was clearly erroneous because DHS presented no evidence that it sought an adoptive home for the children as a sibling group. She additionally argues that there was insufficient evidence of potential harm because the evidence showed that she is a safe and stable parent who benefited from DHS services. She asserts that the circuit court's findings concerning her anger issues are wholly unsupported by the evidence. Jonathan does not challenge the court's adoptability finding but argues that there is insufficient evidence of potential harm. He asserts that he submitted to services and displayed improved parenting techniques.
We disagree. As to Whitney's challenge to the adoptability finding, the termination statute requires only that the court consider the likelihood that the child will be adopted. Brown v. Ark. Dep't of Human Servs. , 2017 Ark. App. 497, 529 S.W.3d 275. The circuit court is not required to find by clear and convincing evidence that the children are adoptable but merely must consider the likelihood of adoption if parental rights are terminated. Taylor v. Ark. Dep't of Human Servs. , 2017 Ark. App. 60, 511 S.W.3d 366. A caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding. Brown , 2017 Ark. App. 497, 529 S.W.3d 275. Here, Pearson testified that the children are adoptable and that all their placements had expressed interest in adopting them.
As to potential harm, the evidence supporting the aggravated-circumstances finding also supports the court's potential-harm finding. In considering the *205 potential harm caused by returning the child to a parent, the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. Welch v. Ark. Dep't of Human Servs. , 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms. Collins v. Ark. Dep't of Human Servs. , 2013 Ark. App. 90, 2013 WL 546940. Here, the circuit court found that the children would be at a risk of harm if returned to Whitney and Jonathan's custody because of their unresolved anger issues, which it found presented an emotional and physical danger to the children. And the evidence showed that Whitney and Jonathan displayed aggression throughout the pendency of the case. Accordingly, we hold that the circuit court did not clearly err in finding that termination of Whitney's and Jonathan's parental rights was in the children's best interest.
Affirmed.
Vaught and Hixson, JJ., agree.

The circuit court's order also terminated the parental rights of H.P. and G.D.'s father, Joshua Lawrence; however, he is not a party to this appeal.

The March 1, 2016 hearing was the first hearing that Whitney and Jonathan attended. They did not attend the probable-cause hearing or the adjudication hearing, but Whitney was represented by counsel at both of those hearings.

At a previous hearing, Whitney testified that she had eight parenting-without-violence classes remaining.

Whitney additionally complains that the circuit court failed to timely enter the termination order pursuant to Arkansas Code Annotated section 9-27-341(d). Our supreme court has held that a violation of this statute does not warrant reversal or any other sanction. Wade v. Ark. Dep't of Human Servs. , 337 Ark. 353, 990 S.W.2d 509 (1999). Further, the order entered by the circuit court was simply a written judgment of what the court had announced in open court; thus, Whitney has suffered no real prejudice because the order was entered simply to show that which actually occurred. See id.

Jonathan asserts that he raised his ADA argument to the circuit court when his attorney argued that DHS did not "meet the burden of clear and convincing [evidence] from all the progress, and considering the level of disability that's involved in this [case.]" We disagree.