Cite as 2021 Ark. App. 451

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV–21–240

| | |
|---|---|
| ELIZABETH DARNELL (GARNER) APPELLANT | **Opinion Delivered** November 17, 2021 |
| V. | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-19-275] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD APPELLEES | HONORABLE DIANNA HEWITT LADD, JUDGE AFFIRMED |

## BART F. VIRDEN, Judge

Elizabeth Darnell[1] appeals the Sebastian County Circuit Court's termination of her parental rights to MG (DOB 05/12/19), asserting that the Arkansas Department of Human Services (Department) presented no conclusive evidence of potential harm and that the circuit court clearly erred in terminating her parental rights in light of the less restrictive relative-placement option. We affirm.

### I. *Relevant Facts*

Mark Garner and Elizabeth Darnell are the biological parents of MG.[2] On July 19, 2019, the Department filed a petition for dependency-neglect and emergency custody of

---

[1]Elizabeth's married name is Garner.

[2]Mark Garner's parental rights were terminated in the same order; however, he is not a party to this appeal.

MG, whose whereabouts were unknown, though she was believed to be with Elizabeth or Elizabeth's parents, Paulette and James Darnell. When the petition was filed, the Darnells had custody of two of MG's older siblings, CR (DOB 07/30/02) and CW (DOB 03/04/06). Another sibling, PG (DOB 10/06/17), was in Department custody and had been placed with a foster family. In the affidavit attached to the petition, the Department stated that it had a history with the family beginning in 2006 concerning the older siblings. In 2017, PG tested positive for drugs at birth, and a protective-services case was opened. In 2018, Elizabeth and Mark were arrested on drug-related charges, and PG was placed in foster care. In that case, the court found that Elizabeth had not made "significant progress for reunification." During the pendency of PG's case, MG also tested positive for drugs at birth, although the results of the drug test were not known until after Elizabeth and MG had been discharged from the hospital. For almost two months, the Department could not locate Elizabeth or MG due, in part, to Elizabeth's name change from Darnell to Garner. When Elizabeth was found, she denied using drugs while pregnant and told investigators that MG was with her parents in Conway. When the Department contacted the Darnells, they refused access to MG. Based on the family history, Elizabeth's continued drug use, and the severity of the past maltreatment of MG's siblings, the Department petitioned for MG's removal.

The court entered the ex parte order for emergency custody the same day. Elizabeth was ordered to present MG to the Department and otherwise cooperate. Additionally, the circuit court found that in PG's case, Elizabeth had completed a drug-and-alcohol assessment but failed to engage in the recommended drug treatment. The circuit court also

2

found that Elizabeth was offered drug treatment in 2006 in the cases involving CW and CR.

On July 30, the Darnells filed a petition for appointment of temporary guardians, and MG was placed with them. The circuit court entered the probable-cause order on August 7, finding that probable cause existed at the time of MG's removal based on Elizabeth's February and April positive drug screens while pregnant and MG's positive test at birth.

On October 22, the circuit court entered an amended adjudication order finding that MG was dependent-neglected based on Elizabeth's parental unfitness and neglect, and return to Elizabeth's custody was contrary to MG's welfare. In the order, the court found that the following facts supported the adjudication: The family currently had an open dependency-neglect case on PG, and the Department had been involved with the family for "a significant time." In PG's case, Elizabeth had been offered parenting classes, drug-and-alcohol assessment and treatment, and other services. During the pendency of PG's case, Elizabeth had not informed the Department she was pregnant, even though she had been ordered to inform the Department of any major life events. In February and April before MG's birth, Elizabeth tested positive for methamphetamine, and MG tested positive for amphetamines and methamphetamine at birth. Elizabeth lacked credibility, and her conduct and testimony "were designed to conceal and downplay her drug usage." Elizabeth was ordered to undergo drug treatment and testing; regularly exercise visitation consistent with the Department's recommendation; obtain appropriate housing and transportation; and notify the Department

of any changes in her living situation and contact information, and any significant life events. The circuit court established reunification as the goal of the case.[3]

On January 6, 2020, the court entered the review order finding that further services were required and that the Department would retain custody of MG. The court found that although MG was placed with the Darnells, they had not attended the necessary classes to become a foster home. The court noted that Elizabeth had submitted photographs of her home, which appeared to be appropriate, and ordered the Department to go to the residence to confirm its adequacy. The court determined that Elizabeth had income, and she had transportation adequate for herself but not for MG. Though she had completed parenting classes and a drug-and-alcohol assessment, she had not completed drug treatment, and "due to issues with the drug screens, the mother's screens shall be observed."

The court entered an agreed review order on July 30, finding that the Department had complied with the case plan, and the matter of the parents' compliance would be taken up at the next hearing.

After the permanency-planning hearing, the permanency-planning order was entered on September 23. The circuit court found that the parents had not complied with the case plan and orders of the court. Specifically, Elizabeth had not completed drug treatment or exercised regular visitation, and she had refused access to her home. The court found that Department services were discontinued, though Elizabeth could request services by

---

[3]Elizabeth appealed all adverse rulings in both the original adjudication order and the amended adjudication order. Our court affirmed the circuit court's determination of dependency-neglect. S*ee Garner v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 328, 603 S.W.3d 858.

contacting the Department herself. The circuit court changed the goal of the case from reunification to adoption following termination of parental rights.

On December 12, the Department filed a petition for termination of parental rights. The Department asserted five statutory grounds supporting termination, and Elizabeth stipulated to the fifth ground, prior involuntary termination.[4] As to best interest, the Department stated that MG is adoptable with no known barriers to adoption and asserted that potential harm existed due to "the mother's previous involuntary termination for essentially the same reasons plead above, her subsequent arrests, continued drug use, and failure to remedy her drug addiction."

The circuit court accepted Elizabeth's stipulation to the prior-involuntary-termination ground and proceeded on that ground as the sole statutory basis for termination. At the January 19, 2021 termination hearing, three exhibits pertaining to Elizabeth were submitted to the court: the petition for dependency-neglect and emergency custody regarding MG; the September 15, 2020 order terminating Elizabeth's parental rights to PG and granting the Department power to consent to adoption; and the October 14, 2020 order terminating Elizabeth's rights to PG and setting forth the permanency plan for PG. Cassidey Pickle, the family service worker assigned to the case, testified that MG is an adoptable, happy two-year-old with no major health concerns. Pickle explained that for about the first seven months, MG was placed with her grandparents; however, they could

---

[4]The Department alleged the following statutory grounds: (1) twelve months failure to remedy; (2) that the parent is incarcerated, and the sentence constitutes a substantial period of the juvenile's life; (3) subsequent factors; (4) aggravated circumstances; and (5) prior involuntary termination.

not take care of her long term due to their advanced age and because they did not complete the classes that would lead to their approval as a foster home. Subsequently, MG was placed with PG and her foster family, where MG had lived for close to a year, and Pickle stated that MG and PG "absolutely adore each other." Pickle explained that Elizabeth had not exercised visitation since August 2020 and that Elizabeth's continued drug use posed potential harm to MG.

At the hearing, the court determined that termination was in MG's best interest, finding that MG is adoptable based on Pickle's testimony that MG is adoptable, happy, healthy and doing well in her placement with her sister. The court found that there was potential harm to MG if returned to Elizabeth's custody due to the previous termination of Elizabeth's parental rights based on "the same factors and reasons considered today."

The court entered the termination order on March 1, 2021, in which it found that Elizabeth stipulated to the prior-involuntary-termination statutory ground. In making its decision as to both statutory grounds and the adoptability and potential-harm findings, it considered "the testimony, exhibits, statements of the parties and counsel, the record herein, and other things and matters presented[.]" The court reiterated its finding that MG is adoptable based on Pickle's testimony and found that MG would be subjected to potential harm in light of Elizabeth's "prior involuntary termination that is similar to the circumstances today." Elizabeth timely filed both her notice of appeal and amended notice of appeal.

## II. *Discussion*

This court's review of cases involving the termination of parental rights is de novo. *Brown v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 497, at 3, 529 S.W.3d 275, 278. Grounds for termination must be proved by clear and convincing evidence, which is such a degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.*, 529 S.W.3d at 278. Our inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.*, 529 S.W.3d at 278. Credibility determinations are left to the fact-finder. *Id.*, 529 S.W.3d at 278.

Termination of parental rights is a two-step process requiring a determination that the parent is unfit and that termination is in the best interest of the child. *Id.* at 3–4, 529 S.W.3d at 278. The first step requires proof of one or more statutory grounds for termination. The second step, the best-interest analysis, includes consideration of the likelihood the juvenile will be adopted and of the potential harm caused by returning custody of the child to the parent. *Id.* at 4, 529 S.W.3d at 278. In determining potential harm, which is forward-looking, the court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Id.*, 529 S.W.3d at 278. There is no requirement to establish every factor by clear and convincing evidence; after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child. *Id.*, 529 S.W.3d at 278.

For her first point on appeal, Elizabeth argues that the Department presented no conclusive evidence of potential harm, and the circuit court erred by basing its potential-

harm finding solely on the prior involuntary termination of her parental rights. She compares

her case to *Conn v. Arkansas Department of Human Services*, 79 Ark. App. 195, 85 S.W.3d

558 (2002), in which our court reversed the circuit court's decision that there was potential

harm in returning the child to her parents' custody based solely on the fact that the parents

had their parental rights terminated to another child. *Conn* is distinguishable from the instant

case. In *Conn*, we held that

> [a]t the August 3, 2001, hearing, no testimony was taken. Instead, the trial court terminated appellants' rights to [CMC] on the stipulation that the court had previously terminated their rights to [CC] The order terminating parental rights provides, in pertinent part:
>
> > The Court finds it to be contrary to the child's best interest, health and safety, and welfare to return her to the parental care and custody of her parents, and further finds that the Department of Human Services has proven by clear and convincing evidence that this Court has involuntarily terminated the parental rights of Sherry and Charles Conn, Sr. regarding [CC], the sibling of [CMC].

79 Ark. App. at 197, 85 S.W.3d at 550. We concluded that

> [a]lthough the trial court's order recites that it is contrary to [CMC's] interests to return to the custody of her parents, and that termination is in her best interests, there was no evidence presented to the trial court that would support such a finding. Indeed, no evidence was presented at the termination hearing at all, and thus the termination was based solely on a stipulation concerning the earlier termination of parental rights to [CMC's] sibling. Since only one of the two requirements of the statute was proved, the trial court's decision to terminate parental rights was clearly erroneous.

*Id.* at 198, 85 S.W.3d at 560.

In the instant case, the potential-harm finding was not based on the prior termination

alone. Pickle testified that Elizabeth had not exercised visitation with MG since August 2020

and that placing MG with Elizabeth would subject MG to potential harm because Elizabeth

continued to use drugs. Moreover, the court specifically based the termination decision—

for both statutory grounds and the best-interest findings—on "the testimony, exhibits, statements of the parties and counsel, the record herein, and other things and matters presented[.]" The three exhibits admitted without objection include the petition for dependency-neglect setting forth Elizabeth's prior history with drug abuse and her failure to remedy it; the emergency-custody petition also providing that the cause of MG's removal was drug related; the September 15, 2020 order terminating Elizabeth's parental rights to PG due to unremedied drug use; and the second October 14, 2020 termination order also setting forth that Elizabeth had similarly failed to address her drug issues in PG's case.

Elizabeth also contends that her case is similar to *Ivers v. Arkansas Department of Human Services*, 98 Ark. App. 57, 250 S.W.3d 279 (2007), in which this court reversed the circuit court's termination, holding that there was no conclusive evidence of "continued drug use, incarceration, failure to establish a permanent residence, failure to seek drug treatment, and failure to materially support the child." *Id.* at 67, 250 S.W.3d at 286–87. *Ivers* is inapplicable here. In *Ivers*, the circuit court terminated parental rights even though there was ample evidence that Ivers had sought drug treatment on his own, he had complied with the case plan in every respect, and the maternal grandmother was a viable relative-placement option. Here, the court found that Elizabeth had not complied with the case plan. Specifically, the circuit court determined that she had not completed drug treatment, and she had voluntarily ended visitation with MG in August, five months before the termination hearing. Moreover, in the January 2020 review order, the circuit court found that MG was placed with her grandparents at that time; however, they had not completed the necessary classes to be considered as a foster home.

The circuit court did not clearly err in finding there was potential harm if MG was returned to Elizabeth's custody, relying not only on the prior termination, but on the family service worker's testimony, Elizabeth's testimony, and the exhibits providing that the conditions that caused removal and termination were the same as those in PG's case.

For her second point on appeal, Elizabeth asserts that the circuit court clearly erred in finding that it was in MG's best interest to terminate parental rights "in light of the possible placement with the maternal grandparents by and through the grandparents' guardianship petition that was pending before the trial court." Elizabeth's argument is not preserved for our review.

Recently, our court decided a similar matter. In *Cole v. Arkansas Department of Human Services*, 2020 Ark. App. 481, at 12, 611 S.W.3d 218, 224, Cole argued that "the circuit court failed to consider alternatives for permanency less restrictive than termination, including the guardianship requested by the boys' paternal grandparents or the possible placement of the boys with her great-aunt[.]" This court held that Cole did not propound this argument at the termination hearing and failed to bring up the record of the fifteen-month review hearing when the goal was changed from reunification to adoption; thus, it was not preserved. We held that

> failure to bring up the record of the hearing when the goal was changed to termination of parental rights (fifteen-month review hearing in this case) precluded review on appeal because while the permanency-planning order (fifteen-month review order in our case) was designated in her notice of appeal, the transcript of that hearing was not in the record, and there was no indication in the transcript of the termination hearing that the issue was ever raised to the circuit court.

*Id.* at 11–12, 611 S.W.3d at 224.

Similarly, in the instant case, there is no transcript of the permanency-planning hearing. The permanency-planning order, in which the circuit court changed the goal of the case from reunification to termination, does not indicate that the relative-placement argument was raised at the permanency-planning hearing. Likewise, the transcript of the termination hearing does not reflect that any argument regarding relative placement was presented at that time, and the termination order is silent as to relative placement as a less restrictive option; thus, the matter is not preserved for appeal.

Affirmed.

HARRISON, C.J., and GRUBER, J., agree.

*James & Streit*, by: *Jonathan R. Streit*, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.