Cite as 2023 Ark. App. 173

# ARKANSAS COURT OF APPEALS
### DIVISION III
#### No. CV-22-686

|  |  |
|---|---|
| ALEXIUS HILE AND DUSTIN WOOD<br>APPELLANTS<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | Opinion Delivered March 29, 2023<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-20-355]<br><br>HONORABLE ANNIE HENDRICKS, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Judge

Alexius Hile and Dustin Wood separately appeal the August 11, 2022 order of the Sebastian County Circuit Court terminating their parental rights to their son (MC). Although phrased slightly differently, each parent contends on appeal that the circuit court erred because it did not consider relative placement as part of its best-interest analysis. Because the specific issue raised by the parents on appeal is not preserved, we affirm.

Neither Hile nor Wood challenge the circuit court's finding of statutory grounds for termination; thus, any such challenge is waived. *Scott v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 200, at 3, 624 S.W.3d 697, 699. They also do not attack the circuit court's findings regarding adoptability or future harm within the best-interest analysis. Thus, this court need not address those findings. *See, e.g., Gibby v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 146, at

25, 643 S.W.3d 794, 809. The parents' arguments focus solely on relative placement as part of the best-interest analysis. Due to the narrow issue before us, only a brief recitation of the facts is warranted.

I. *Facts and Procedural History*

On October 17, 2020, Hile took four-month-old MC to an emergency room due to a head injury. When MC was examined, it was observed that he had other injuries that were not consistent with the explanation provided by his parents regarding how the injuries occurred. Subsequent testing revealed that MC had eight fractures in at least two different stages of healing in his skull, clavicle, left arm, and shin; and ribs six, seven, nine, and ten. As a result, the Arkansas Department of Human Services (DHS) exercised emergency custody of MC and removed him from the parents' custody. Hile was drug screened and tested positive for THC, while Wood admitted that if he were drug screened, he would test positive for THC.

On October 20, DHS filed a petition for dependency-neglect and emergency custody, alleging that MC was dependent-neglected based on abuse, neglect, and parental unfitness. Within the supporting affidavit, the following individuals were identified as MC's relatives: Veronica Snow, MC's paternal grandmother; Doris Bowen, MC's paternal great-grandmother; and Katrina Patterson, MC's paternal great-aunt. It further stated that a protective-services case was already open since MC was born with THC in his system, and both parents had been placed in the foster-care system as juveniles. The circuit court held hearings and entered orders finding probable cause and adjudicating MC dependent-

neglected based on physical abuse by an unknown offender along with parental unfitness and failure to protect by both parents.

On April 14, 2021, the court held a review hearing at which the circuit court made various findings—including that DHS had made reasonable efforts—and continued the goal of reunification. On October 20, 2021, the court held a permanency-planning hearing at which it found DHS had made reasonable efforts and changed the goal of the case to concurrent goals of reunification and adoption.

In January 2022, both Hile and Wood were sentenced to time in the Arkansas Department of Corrections pursuant to negotiated pleas within their respective revocation proceedings. In exchange for their respective pleas, the State agreed not to file charges against them related to MC's injuries. On January 19, the court held a fifteen-month review hearing and continued the goals and made various findings, including the finding that DHS had made reasonable efforts.

On February 25, 2022, MC's attorney ad litem filed a petition to terminate Hile's and Wood's parental rights (TPR), asserting three statutory grounds. The court heard testimony and received evidence regarding the TPR on April 27. Robby McKay, a foster care supervisor, testified in relevant part that DHS has had an open case on MC since he was born, and throughout the case, the parents insisted that they had been MC's only caretakers. DHS "looked into" relative placement, but it did not work out "because of prior history with the Department," and "pretty much every relative" DHS looked into "had some issue" that

prevented placement of MC with that relative. She further testified that if the court ordered MC to be placed with a relative that day, it would be impossible.

On cross-examination, McKay testified that DHS looked at Snow, Bowen, and Patterson for relative placement. The issue with Snow was that DHS sent an Interstate Compact on the Placement of Children home-study request, but Oklahoma denied placement. McKay further testified that they "probably had problems finding relatives as we had history with both of these parents as juveniles and their family members were on the central registry."

Neither Hile nor Wood testified, nor did they put on any evidence at the hearing. There is no record evidence that Snow, Bowen, or Patterson had ever expressed any interest in MC, attended any of the proceedings regarding him, or had met or visited with him, let alone had any sort of relationship with him.

Closing argument was made on behalf of DHS followed by arguments on behalf of Hile and Wood. Just before the attorney ad litem gave her closing, Hile's attorney interjected and said the following:

> I'm sorry, Judge. Just one other thing that I did forget to mention, Your Honor. When we talked about family members and the other—the other side of this would be an adequate family member that would be there to be able to take the child instead of a stranger or a foster parent, the Department went through three. One of them was denied on a denied home study. The other two, the Department could not tell me whether they looked at them, what they had done, or what their reason was. So that's also—I want to put in my closing statement, I think the Department should have made better efforts to find those other family members, especially since they knew in January that the parents were incarcerated. Thank you.

The attorney ad litem then made her closing argument. DHS's attorney then argued, in part, as follows:

> I would also say that Ms. McKay did testify that we looked at other families, other relatives, and that there were various reasons—we didn't have like a laundry list of these reasons, but they were not approved by the Department for placement. Thank you.

No relative-placement argument was made by Wood's attorney.

The court orally ruled that it was finding by clear and convincing evidence that it was in MC's best interest that the parents' rights be terminated. The court specifically set out that DHS had met its burden of proof regarding the statutory grounds alleged and that MC is adoptable, and the risk of harm to MC was physical and "far outweighs the adoptability issue." At the conclusion of its ruling, the court addressed the attorneys and asked if there was anything else that needed addressing. In response, Hile's attorney asked that Hile be provided some photographs and then objected to the court's finding of physical abuse and failure to protect because the finding at the adjudication was physical abuse by an unknown offender. The court then corrected that finding, and the hearing concluded. The court's oral ruling did not address relative placement.

The order setting forth these findings and terminating both Hile's and Wood's rights was entered on August 11. The circuit court specifically found that McKay's testimony was credible. The court found that DHS had made reasonable efforts to finalize MC's permanency plan and had made reasonable and meaningful efforts to provide appropriate

5

family services to the family. The order makes no reference to relative placement. Each of the parents filed a timely notice of appeal.

## II. *Applicable Law and Standard of Review*

Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, at 5, 554 S.W.3d 285, 289. To terminate parental rights, DHS must prove, by clear and convincing evidence, that a minimum of one statutory ground exists and that it is in the child's best interest to do so. Ark. Code Ann. § 9-27-341 (Supp. 2021). Clear and convincing evidence is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Bentley*, 2018 Ark. App. 374, at 4–5, 554 S.W.3d at 289.

In finding that termination is in the best interest of the child, the circuit court is required to consider the likelihood that the child will be adopted if the petition is granted and the potential harm to the health and safety of the child that might result from returning the child to the parent's custody. Ark. Code Ann. § 9-27-341(b)(3)(A). It is the overall evidence—not proof of each factor—that must demonstrate that termination is in the child's best interest. *Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, at 9, 611 S.W.3d 218, 223. This court has held that other factors to be considered in making a best-interest finding may include preserving a child's relationship with a grandparent; the cessation of child support from a parent; if less drastic measures, such as a no-contact order or supervised

6

visitation, may be used; if continued parental contact would be beneficial to the children if or when they are living with a relative and not in an indeterminate state that is working against them; and whether the children are living in continued uncertainty. *Id.* at 11, 611 S.W.3d at 224.

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 213, 40 S.W.3d 286, 291 (2001). The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Shawkey v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 2, at 4, 510 S.W.3d 803, 806. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Bentley*, 2018 Ark. App. 374, at 5, 554 S.W.3d at 289.

The failure to raise a challenge or obtain a ruling below is fatal to the appellate court's consideration of an issue on appeal. *Anderson v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 522, at 8, 385 S.W.3d 367, 371. The parents, as appellants, have the burden of bringing a record before this court sufficient to decide the issue presented. *Bryant v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 390, at 7, 383 S.W.3d 901, 905. Even in termination cases, this court will not address issues raised for the first time on appeal. *Tuck v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 468, at 7, 442 S.W.3d 20, 24.

III. *Discussion*

Hile's sole point on appeal is that the evidence failed to prove that termination was in MC's best interest. Wood's point on appeal is that the circuit court clearly erred in

7

terminating his parental rights. Both only take issue with the circuit court's best-interest finding with respect to relative placement. Appellees respond first that the issue is not preserved for appellate review because it was neither sufficiently raised nor was a ruling made.

Appellees are correct. A relative-placement argument was never specifically developed by either parent's attorney in connection with the best-interest determination at the hearing.[1] The closest Hile's attorney came was during closing argument when he stated "[S]o that's also—I want to put in my closing statement, I think the Department should have made better efforts to find those other family members, especially since they knew in January that the parents were incarcerated." However, there is no indication as to what purpose that statement was being made and nothing to tie it to the best-interest determination. Additionally, to the extent that this statement is an argument in connection with the best-interest determination, it did not take issue with DHS's efforts to *place* MC with a relative— the issue on appeal—but rather DHS's efforts to *find* relatives. Moreover, the circuit court's termination order made no reference to relative placement at all; without a ruling from the circuit court, there is nothing for this court to review on appeal.

This court has come to a similar conclusion in a number of other cases. *See, e.g., Scott*, 2021 Ark. App. 200, at 4, 624 S.W.3d at 700 (finding that the parent's argument regarding family placement was not preserved because the specific argument was not made to the circuit court at the termination hearing and thus precluded this court from considering it

---

[1]We are unaware whether a relative-placement argument was made prior to the TPR hearing because those hearings and their transcripts are not part of this record.

on appeal); *Darnell v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 451, at 10–11, 636 S.W.3d 820, 826–27 (holding that the parent's argument was not preserved for review where there was no indication in the record that the relative-placement argument was raised at either the permanency-planning hearing, when the goal was changed from reunification to termination, or at the termination hearing, and the termination order was silent as to relative placement as a less restrictive option).

Because the parents failed to make the specific argument they assert on appeal to the circuit court and further failed to obtain a ruling on that argument, it is not preserved. As such, we affirm the decision of the circuit court terminating the parental rights of Hile and Wood without reaching the merits of their arguments.

As a final note, Hile pointed out that the orders in this matter were routinely entered long after the hearings concluded. Although the Juvenile Code sets forth certain time frames for the court regarding the various hearings and orders, these statutes do not express a remedy for a violation of these time limits, and we have held that when the legislature has not seen fit to fashion a remedy, it is not the province of the court of appeals to do so. *Turner v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 52, at 4–5, 539 S.W.3d 635, 637. However, given a child's need for stability, certainly the best practice in these cases would be for the entry of the written orders in a manner that complies with the dictates of the Juvenile Code, and we strongly encourage all of those involved in DHS proceedings to do so.

Affirmed.

VIRDEN and BROWN, JJ., agree.

9

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for separate appellant Alexius Hile.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant Dustin Wood.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.